Calvin BYRD, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 481, 2010.

Supreme Court of Delaware.

Submitted: June 22, 2011.
Decided: Aug. 11, 2011.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, RIDGELY, Justices, and NOBLE, Vice Chancellor,[1] constituting the Court en Banc.

HOLLAND, Justice:

The defendant-appellant, Calvin Byrd ("Byrd"), appeals from final judgments of conviction in the Superior Court for Burglary in the Second Degree, Theft, Conspiracy in the Second Degree, Resisting Arrest and Criminal Mischief. In this direct appeal, Byrd argues that the trial judge violated his due process rights under the United States Constitution by allowing an impermissibly suggestive in-court identification of him by a police officer. We have concluded that argument is without merit.

### Facts

On November 20, 2009 the New Castle County Police received a tip about suspicious activity in front of a home on Old Forge Road. Officer Richard Blackston responded to the call for a burglary in progress, reportedly involving three black male subjects. When he arrived at the house in question, Officer Blackston observed that the door had been forced open.

Upon entering the house, Officer Blackston testified that there were no lights on inside of the house. He observed that there was a staircase that came down from the second floor and faced away from the front door towards the rear sliding-glass door. The base of the staircase was fifteen feet away from him and the sliding glass door was another three feet away. Officer Blackston testified that he could not see the stairs from his location at the front door.

After hearing movement upstairs, Officer Blackston shouted "County Police," and then heard two individuals run down the stairs. According to Officer Blackston, after the two men reached the bottom of the steps they continued out the rear sliding-glass door, but each man glanced at him for a brief "second." Officer Blackston testified that the two men were black males, one was "heavyset, had what appeared to be like a small Afro" and was of medium complexion, while the other was not as heavy as the other man, had cornrows in his hair, light in color, and wearing a black jacket.

While Officer Blackston was pursuing the two men, Lieutenant Treadwell arrived in the neighborhood. He saw one black male wearing a white t-shirt and blue jeans running down the street. Lieutenant Treadwell did not know whether that man was involved in the incident. He then observed Officer Blackston chasing a heavy-set black man. Lieutenant Treadwell assisted in that individual's apprehension. After the heavy-set black male was in custody, the police found a portable

---

[1]. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

game system in his possession and identified him as Michael Newkirk ("Newkirk").

Lieutenant Treadwell then called in the description of the first black male he had seen running down the street. Tyree Pollard ("Pollard") was taken into custody on the other side of the neighborhood after matching the description given by Lieutenant Treadwell. No one else was seen running by the other officers or taken into custody that day.

While Newkirk and Pollard were being arrested, Officer Golden arrived at the scene. He observed a black male standing in front of a house on Old Forge Road that was adjacent to the crime scene property. Officer Golden secured the crime scene property, and then returned to interview the black male, Denzel Butler ("Denzel"), and his mother Michelle Butler ("Michelle"), who both told him that they resided next door. Denzel told Officer Golden that earlier in the day he had observed three men in the street. He spoke briefly to one of the men, "Cal," with whom he had attended Christiana High School. Michelle also stated that she observed three men in the street, but that she could not identify any of the individuals.

Later that day, the Butlers were again interviewed by Detective Mayer, the Chief Investigating Officer. During this second interview, the Butlers did not provide any new information to the police. During Detective Mayer's investigation, neither the Butlers nor Officer Blackston were ever asked to identify the men they had observed. At trial, Detective Mayer testified that he never asked Officer Blackston to identify the men because he "didn't know about the part about him being able to see the face. I probably just did the assuming where it was like, ah, if he's in a foot chase, he's probably not really going to see him."

A warrant for Byrd's arrest was issued seventeen days after the burglary. Byrd was indicted on charges of Burglary in the Second Degree, Theft, Conspiracy in the Second Degree, Resisting Arrest, and Criminal Mischief. Byrd and Pollard went to trial together.

At trial, Officer Blackston testified that Byrd was one of the two men whose face he caught a glimpse of for one second at the Old Forge Road property crime scene. He also stated that he believed that Newkirk was the other individual he saw in the house. Following this testimony, Byrd made a motion to strike the in-court identification by Officer Blackston as impermissibly suggestive in violation of the due process clause contained in the United States Constitution. The trial judge denied that motion.

Denzel testified that before the incident at the Old Forge property, Byrd came to his door and asked to use the bathroom. Denzel allowed him to do this while the other two men remained in the street. After Byrd left, Denzel testified that he and Michelle remained in their home for approximately 20–25 minutes until they saw the police arrive. Denzel testified that he never told the police this information because he was never asked. He also testified that he could not remember what Byrd wore, that he did not see anyone go into the Old Forge property, and that he did not know whether Byrd was involved in the incident.

Michelle testified that she saw three men when she came to the door. Contrary to her police interviews, she testified that she knew one of the men because he had been to her house before. Michelle stated at trial that she did not provide the information identifying Byrd or his use of her bathroom because the officers had been rude to her, which the officers denied. Michelle also testified that Pollard was

with Byrd that day. Consistent with Denzel's testimony, she testified that Denzel allowed Byrd to use the bathroom, and that approximately ten minutes after Byrd left her house the police arrived. Michelle could not remember what Byrd was wearing but testified that he was carrying a black backpack.

The State did not present any physical evidence linking Byrd to the crime scene, nor did it present any evidence from either of his co-defendants linking Byrd to the crime. Byrd requested a jury instruction with respect to identification. The trial judge issued a modified version of the requested instruction. At the conclusion of the trial, Pollard was acquitted while the jury convicted Byrd of burglary and the other related offenses. Byrd was sentenced to one year in prison followed by various levels of probation.

### Trial Court Ruling

The trial judge denied Byrd's motion to strike the in-court identification made by Officer Blackston. The trial judge agreed with Byrd that the identification was suggestive, but ruled that the suggestiveness did not rise to the level of a constitutional violation. The trial judge found that several factors militated against a finding of unconstitutionality:

> First, your client is, has unique physical features in terms of complexion, cornrows, or whatever. And, secondly, the officer himself is African–American. We do not have a cross-racial identification issue that has been so frequently mentioned as, an issue in eyewitness identification by experts and courts, and so forth and so on. Thirdly, we have the chase that went on outside which cov-

ered some distance, based on his testimony. Now, while he may not have turned around, and he doesn't recall whether he turned and looked, I'm satisfied that there is sufficient basis to add to his identification of him here in the courtroom, granting that it was suggestive but not to the level of it being unconstitutionally so. Therefore, the motion to strike is denied.

### Identification Testimony

■ In-court identification is "probably the most dramatic and persuasive" evidence.[2] The general rule is that, absent an unduly suggestive pretrial identification procedure, questions as to the reliability of a proposed in-court identification affect only the in-court identification's weight and not its admissibility. However, to satisfy due process, pretrial identifications resulting from a suggestive process must comport with the two-part analysis set forth by the United States Supreme Court in *Neil v. Biggers.*[3]

■ Byrd acknowledges that there was no pretrial identification of him at all by Officer Blackston. Nevertheless, in this appeal, Byrd contends that the admissibility of the in-court identification of him by Officer Blackston should have been determined under the two-step analysis set forth in *Biggers.*" The first step is to determine whether the identification procedure was impermissibly or unnecessarily suggestive.[4] At this stage of the inquiry, the defendant has the burden of proof. If the defendant carries his burden of proof, the second step examines the five factors enumerated in *Biggers* to determine

---

**2.** *United States v. Hill,* 967 F.2d 226, 231 (6th Cir.1992) (internal quotations omitted).

**3.** *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

**4.** *See id.* at 197–199, 93 S.Ct. 375.

whether the identification procedure was so suggestive as to render the identification unreliable and, hence, inadmissible.

■■■ At the second step of the *Biggers* inquiry, the State has the burden of proof. In *Biggers*, the Supreme Court held that in order to satisfy due process, pretrial identifications resulting from a suggestive process must be examined under the totality of the circumstances in order to determine the identification's reliability.[5] The reliability of a pretrial identification resulting from a suggestive process depends on: first, the witness's opportunity to view the criminal at the time of the crime; second, the witness's degree of attention at the time of the crime; third, the accuracy of the witness's prior description of the defendant; fourth, the witness's level of certainty when identifying the suspect at the confrontation; and fifth, the length of time that has elapsed between the crime and the confrontation.[6] If an out-of-court identification is found inadmissible under the second step of the *Biggers* analysis, a subsequent in-court identification will also be inadmissible unless it "did not result from the earlier confrontation ... but was independent thereof." [7]

In this case, Byrd emphasizes his status as the only African–American male wearing "cornrows" in the courtroom during Officer Blackston's in-court identification testimony. Byrd claims that in conjunction with the already suggestive courtroom environment, his unique appearance created an environment sufficiently suggestive to trigger the admissibility analysis which the Supreme Court of the United States applied in *Neil v. Biggers*. Byrd characterizes any division of analysis between pretrial and in-trial identifications as an "arbitrary line." Accordingly, Byrd argues that this Court should apply the United States Supreme Court's decision in *Neil v. Biggers* to in-court identifications.

### In–Court Identifications

The United States Supreme Court has not decided whether the *Biggers* two-step analysis applies to a strictly in-court identification not preceded by an impermissibly suggestive pretrial confrontation. However, "the majority of courts have [concluded] that *Neil v. Biggers* does not apply to in-court identifications." [8] In this appeal, we requested supplemental memoranda from both parties to address *United States v. Domina*,[9] *State v. Lewis*,[10] and *State v. King*.[11]

In *United States v. Domina*,[12] the Ninth Circuit Court of Appeals declined to apply *Neil v. Biggers* to initial in-court identifications. The Ninth Circuit noted that the concerns inherent in an in-court identification based on a suggestive pretrial identification process are different from those present in an initial in-court identification and justify different treatment in determining their admissibility:

**5.** *Id.* at 199–200, 93 S.Ct. 375.

**6.** *Id.*

**7.** *State v. Ober*, 116 N.H. 381, 359 A.2d 624, 626 (1976).

**8.** *State v. Lewis*, 363 S.C. 37, 609 S.E.2d 515, 518 (2005). *See, e.g., United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

**9.** *United States v. Domina*, 784 F.2d 1361 (9th Cir.1986).

**10.** *State v. Lewis*, 363 S.C. 37, 609 S.E.2d 515 (2005).

**11.** *State v. King*, 156 N.H. 371, 934 A.2d 556 (2007).

**12.** *United States v. Domina*, 784 F.2d 1361 (9th Cir.1986).

The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. Because the [fact finder is] not present to observe the pretrial identification, [the fact finder is] not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's statements, are not available to the [fact finder] during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially.

When the initial identification is in court, . . . [t]he [fact finder] can observe the witness during the identification process and is able to evaluate the reliability of the initial identification.[13]

■ In addition to affording the fact finder the opportunity to observe and assess the identification itself, an initial in-court identification is subject to immediate challenge through cross-examination.[14] "Where a witness first identifies the defendant at trial, defense counsel may test the perceptions, memory and bias of the witness, contemporaneously exposing weaknesses and adding perspective in order to lessen the hazards of undue weight or mistake."[15] Counsel can also "argue in summation as to factors causing doubts as to the accuracy of the identification-including reference to . . . any suggestibility in the identification procedure."[16]

In *United States v. Domina*, the Ninth Circuit also noted that while there "can be little doubt that the initial in-court identification is suggestive . . . procedures could be used to lessen the suggestiveness,"[17] but that these "are matters within the discretion of the court."[18] This is due to the fact that:

While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the "integrity" of the adversary process.

Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.[19]

In *State v. Lewis*,[20] the South Carolina Supreme Court held that the *Neil v. Biggers* test "does not apply to in-court

---

13. *Id.* at 1368 (internal citations omitted).

14. *See Baker v. Hocker*, 496 F.2d 615, 617 (9th Cir.1974).

15. *People v. Rodriguez*, 134 Ill.App.3d 582, 89 Ill.Dec. 404, 480 N.E.2d 1147, 1151 (1985), *cert. denied*, 475 U.S. 1089, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986).

16. *Manson v. Brathwaite*, 432 U.S. 98, 113–14 n. 14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (internal citation omitted).

17. *United States v. Domina*, 784 F.2d at 1368–69.

18. *Id.* at 1369.

19. *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. at 113–114, 97 S.Ct. 2243).

20. *State v. Lewis*, 363 S.C. 37, 609 S.E.2d 515 (2005).

identification and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument."[21]  Specifically, the South Carolina Supreme Court held that:

> Neil v. Biggers does not apply to a first-time in-court identification because the judge is present and can adequately address relevant problems; the jury is physically present to witness the identification, rather than merely hearing testimony about it; and cross-examination offers defendants an adequate safeguard or remedy against suggestive examinations.[22]

In State v. King,[23] the New Hampshire Supreme Court adopted the reasoning of both the Ninth Circuit and the South Carolina Supreme Court and held that:

> [b]ased upon the different considerations involved in pretrial and in-court identifications, we join the apparent majority of courts in concluding "that Neil v. Biggers does not apply to in-court identifications and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument." The inherent suggestiveness in the normal trial procedure employed here does not rise to the level of constitutional concern. Rather ... "[t]he manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court."[24]

## Majority View Adopted

■ Based upon the different considerations involved in pretrial and in-court identifications, we join the majority of courts in concluding that the two-step Biggers analysis does not apply to in-court identifications that do not come following an impermissibly suggestive pretrial identification. The inherent suggestiveness in the normal trial setting does not rise to the level of constitutional concern. Rather, as stated by the court in State v. Smith,[25] "[t]he manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court."[26]  Accordingly, we hold that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument.[27]

■ In this case, Officer Blackston's in-court identification was subject to cross-examination and argument. The issues raised on appeal by Byrd, such as the brief time that Officer Blackston observed Byrd's face, the amount of time that had passed, and that Officer Blackston never made an identification before trial are all issues that affect the weight of the identification, not the admissibility of the identification. All of these issues were addressed during the cross examination of Officer Blackston and argued to the jury during the closing remarks by Byrd's attorney.

It was within the discretion of the trial judge to allow or strike Officer Blackston's testimony. The circumstances that pre-

---

21.  Id. at 518.

22.  Id.

23.  State v. King, 156 N.H. 371, 934 A.2d 556 (2007)

24.  Id. at 561 (internal citations omitted).

25.  State v. Smith, 200 Conn. 465, 512 A.2d 189 (1986).

26.  Id. at 193 (internal citations omitted). See also United States v. Bennett, 675 F.2d 596, 598 (4th Cir.1982) (noting that propriety of in-court identification procedure is determined in the exercise of trial court's discretion), cert. denied, 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982).

27.  State v. Lewis, 609 S.E.2d at 518.

ceded his in-court identification of Byrd were no more suggestive than the normal inherent suggestiveness that is present in any trial. The record reflects that the trial judge did not abuse his discretion in admitting the in-court identification of Byrd by Officer Blackston.

### Conclusion

The judgments of the Superior Court are affirmed.