# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                )
                                  )
                                  )
          v.                      )
                                  )
KEITH TALLEY,                     )          ID NO. 2001014954
                                  )
          Defendant.              )
                                  )
                                  )
                                  )
                                  )

Date Submitted: January 10, 2022
Date Decided: January 12, 2022

*Upon the Defendant's Motion to Suppress. **DENIED.***

## ORDER

Albert J. Roop, V, Esquire, John W. Downs, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware, Attorneys for the State of Delaware.

Misty A. Seemans, Esquire, Wilmington, Delaware, Attorney for Defendant.

**SCOTT, J**

1

**INTRODUCTION**

Defendant Keith Talley ("Mr. Talley") is charged with murder in the first degree and associated charges in connection with allegations arising from the death of Jaron Smullen on December 3, 2019. Mr. Talley moved to suppress: (1) Witness 1's identification of Mr. Talley based on single picture shown; (2) Witness 4's identification of Mr. Talley based on a six-pack photo line-up; (3) Witness 2's identification of Mr. Talley based on a six-pack photo line-up; and (4) if the out of court identifications are impermissible, then any in court identifications stemming from them. Because the identifications were not unnecessarily suggestive and there is not a likelihood of irreparable misidentification, the Motions to Suppress are **DENIED.**

**STATEMENT OF FACTS**

On December 3, 2019, the Wilmington Police Department ("WPD") responded to the 100 Block of East 24th Street for a shooting. Two 911 callers described the shooter as running from the scene. Arriving officers located a victim laying in the doorway of 112 E. 24th Street with a gunshot wound to his lower torso. The victim succumbed to his injury and was pronounced dead on December 4, 2019.

During its investigation, WPD collected video evidence and interviewed eyewitnesses. There are three witnesses, in chronological order, WPD interviewed

which their identifications of Mr. Talley gave rise to these suppression motions: Witness 1, Witness 4 and Witness 2.

On December 4, 2019, and December 6, 2019, WPD interviewed Witness 1. In the December 4th interview, Witness 1 does discuss things she heard about the shooting on December 3rd. But Witness 1 also refers to Mr. Talley by his nickname, "KJ," and describes Mr. Talley as wearing all-black. Witness 1 also describes knowing "KJ" well enough to identify him, then does so based upon the police showing Witness 1 a single photograph of Mr. Talley.

In the December 6th interview, Witness 1 described being present while "KJ" and "J-Town" (the victim) argued, leaving the area, and later receiving a phone call that KJ shot J-Town. While Witness 1's information about KJ shooting J-Town may be hearsay, Witness 1's confirmation about being present for the argument leading up to the shooting, describing KJ's clothing, and identifying KJ are admissible statements at trial. To be clear between the two interviews with Witness 1, Witness 1 did not identify KJ as the shooter. Witness 1 only identified KJ as the individual arguing with J-Town as Witness 1 did not witness the shooting and was familiar with Mr. Talley to have the ability to identify him.

WPD interviewed Witness 4 on January 15, 2020. Witness 4 described an argument between the defendant and the victim, discusses a video on a cellphone

3

possibly depicting parts of the argument, states the defendant shot the victim, and identified the defendant in a 6-pack line-up.

WPD arrested the defendant, Keith Talley, on January 27, 2020.

WPD interviewed Witness 2 on April 22, 2020. During that interview, in addition to identifying the defendant out of a six-pack photo line-up, Witness 2 stated the following:

- Friends with both "KJ" and "J-Town" and is reluctant to get involved.
- KJ didn't mean to do that.
- If I could have stopped it, I would have.
- But I couldn't, "it was past go."
- "I'm not jumpin' in front of a bullet."
- "They was arguing," referring to KJ and J-Town.
- Doesn't know what about.
- Notes somebody has a camera or a phone, and upon listening to the recording, the listener would hear KJ say he "didn't want no smoke" or to fight.
- J-Town is bigger than KJ.
- J-Town kept motioning like he was going to get a gun or something.

In context, these statements are describing the seconds leading up to the shooting.

In the State of Delaware's ("State") response, the State draws attention to defense counsel failing to include there are two video segments to the argument, minutes apart, which are captured on two separate views of video surveillance of the

4

altercation between Mr. Talley and the victim as well as Mr. Talley feeing from the scene.

When asked in the interview, Witness 2 acknowledges there are two parts to the argument between Mr. Talley and the victim but could not confirm whether the Mr. Talley had a gun.

The State indicted the defendant on the first Grand Jury following the courts reopening during the COVID-19 Pandemic, July 13, 2020.

On December 7, 2021 – 42 days before trial - the State provided redacted witness statements under a protective order to defense counsel.

On December 22, 2021, Mr. Talley moved to suppress the out-of-court Identification and In-Court Identification. And on December 29, 2021, the State responded.

Jury selection is scheduled to begin on January 13, 2022, and trial is set to begin on January 18, 2022.

## DISCUSSION

### I. Witness 1's Identification on December 4, 2019 by a Single Photograph

"An identification procedure will not pass constitutional muster where it is so impermissibly suggestive as to give rise to a very substantial likelihood of

irreparable identification."[1]  To violate due process, "the unnecessarily suggestive

identification procedure must also carry with it the increased danger of an irreparable

misidentification."[2]  If an identification is impermissibly suggestive, evidence of the

identification will not be excluded at trial so long as the identification is reliable.[3]

When determining if an identification procedure is impermissible, this Court must

determine under the totality of the circumstances: (1) whether the procedure used

was unnecessarily suggestive; and (2) whether there was a likelihood of

misidentification.[4]  In determining the reliability of the identification, The United

States Supreme set forth the following factors to consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the crime and confrontation.[5]

Mr. Talley argues the procedure used to conduct the single photograph

identification was unnecessarily suggestive, thus, compromising Mr. Talley's right

---

[1] *Younger v. State*, 496 A.2d 546, 550–51 (Del.1985) (internal quotations omitted) (*quoting Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

[2] *Id.* (*citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977*); Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

[3] *State v. Sierra*, 2011 WL 1316151, at *3 (Del.Super.Apr.5, 2011).

[4] *Richardson v. State*, 673 A.2d 144, 147 (Del.1996) (*citing Harris v. State*, 350 A.2d 768, 770 (Del.1975)).

[5] *Richardson*, 673 A.2d at 148 (*citing Manson v. Brathiwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1997)).

6

to due process. Specifically, Witness 1 was shown a single photograph of Mr. Talley and identified him as the individual arguing with the victim, however, did not witness the shooting. Mr. Talley contends a single photo array is impermissibly suggestive. However, the Delaware Supreme Court held showing a single photograph is not, *ipso facto*, a denial of due process and that the totality of the surrounding circumstances must be considered.[6]

> *A. When considering the totality of the circumstances, there is not a denial of due process based on Mr. Talley being identified by Witness 1.*

Mr. Talley contends a single photograph array is *per se* impermissibly suggestive. In the State's Response, it points this Court to *Hickman* and *Redden*, two cases in which eyewitness's were shown a single photograph and identified the defendant as the suspect. However, this Court does not find this caselaw to be applicable to the facts before it as this witness is not identifying the shooter as Mr. Talley.

It is clear to this Court the identification of Mr. Talley related to events leading up to the crime. Witness 1 only identified Mr. Talley as the person who Witness 1 saw arguing with the victim and Witness 1 described what Mr. Talley was wearing on the date Witness 1 saw Mr. Talley and the victim arguing. There is nothing in

---

[6] *Stanford v. State*, 608 A.2d 730, 1992 WL 21122 (Del. 1992) (citing *Redden v. State*, Del.Supr., 269 A.2d 227, 228-29 (1970).

these facts to suggest Witness 1 is identifying Mr. Talley as the shooter so previous cases relating to a witness identifying a perpetrator based on single photograph do not apply. The showing of a single photograph to Witness 1 was not unnecessarily suggestive as "an identification is suggestive when the police conduct it in such a way that the witness' attention is directed to a particular individual as the suspect upon whom the police have focused."[7] This did not occur based on these facts because police did not direct Witness 1 to a particular individual as the suspect who committed the crime. After considering the Neil factors, the Court concludes, under the totality of the circumstances, Witness 1's identification of Mr. Talley was reliable. Accordingly, since the Court has also found the identification procedure used was not impermissibly suggestive, Mr. Talley's motion must be denied as he has not met his burden in demonstrating that there was a "very substantial likelihood of irreparable misidentification."[8]

## II. Witness 4's Identification on January 15, 2020, by Use of Six-Pack Photo Line-Up

Mr. Talley argues the State did not give any information about the six-pack photo line-up in which Witness 4 positively identified Mr. Talley. Without any basis to his argument nor any caselaw in support, Mr. Talley argues given the complete lack of information regarding the process used by police during Witness 4's

---

[7] *U.S. ex rel. Goodyear v. Del. Corr. Ctr.*, 419 F.Supp. 93, 96 (D. Del. 1976).
[8] *Neil v. Biggers*, 409 U.S. 188, 198 (*citing Simmons*, 390 U.S. 384).

identification of Mr. Talley, the identification should be suppressed as impermissibly suggestive and unreliable.

### A. The Photo Array Was Not Unnecessarily Suggestive and There Is No Danger of Irreparable Misrepresentation

Mr. Talley does not allege the photo array was impermissibly suggestive as to demonstrate police conduct directed Witness 4 to a particular individual as the suspect upon whom the police have focused. Mr. Talley suggests this Court should find the positive identification from a six-pack photo line-up to be impermissibly suggestive and unreliable because the only information in the police report is Witness 4 positively identified Mr. Talley from the photo array. Without anything else to go on, the Court will not render this identification impermissibly suggestive or unreliable, especially given Witness 4, like Witness 1 was familiar with Mr. Talley. After considering the Neil factors, the Court concludes, under the totality of the circumstances, Witness 4's identification of Mr. Talley was reliable. Accordingly, since the Court has also found the identification procedure used was not impermissibly suggestive, Mr. Talley's motion must be denied as he has not met his burden in demonstrating that there was a "very substantial likelihood of irreparable misidentification."[9]

---

[9] *Id.*

**III. Witness 2's Identification on April 22, 2020, by Use of Six-Pack Photo Line-Up**

Mr. Talley argues the identification is impermissibly unreliable because the photo array for Witness 2's identification was based on Witness 1's "impermissible and unreliable identification" of Mr. Talley from a single photograph so it is a fruit of a poisonous tree. Additionally, Mr. Talley argues the identification failed factors three through five of the *Neil* reliability test because there is nothing to indicate the witness had given a prior description of the defendant, how certain the witness was about the identification, and 4.5 months lapsed between the offense and the identification.

> A. *The Photo Array Was Not Unnecessarily Suggestive and There Is No Danger of Irreparable Misidentification.*

Mr. Talley does not allege the photo array was impermissibly suggestive as to demonstrate police conduct directed Witness 2 to a particular individual as the suspect upon whom the police have focused. Mr. Talley suggests this Court should find the positive identification from six-pack photo line-up to be impermissibly suggestive and unreliable because the identification was tainted by knowing Mr. Talley had been arrested and the identification is the "fruit of the poisonous tree" as Witness 1's identification was impermissibly suggestive. This Court has addressed Witness 1's statement and has found the identification to stand, therefore, Mr. Talley's argument regarding the fruit of a poisonous tree is moot.

10

Additionally, the Court will not render this identification unreliable, like Mr. Talley contends, because just like Witness 1 and Witness 4, Witness 2 was also familiar with Mr. Talley. After considering the Neil factors, the Court concludes, under the totality of the circumstances, Witness 2's identification of Mr. Talley was reliable. Accordingly, since the Court has also found the identification procedure used was not impermissibly suggestive, Mr. Talley's motion must be denied as he has not met his burden in demonstrating that there was a "very substantial likelihood of irreparable misidentification."[10]

## IV. Subsequent In-Court Identification

Defense argues that any in-court identification will not be reliable and seeks suppression of the in-court identification. The likelihood of misidentification is what violates a defendant's right to due process, causing the exclusion of evidence.[11] "[T]o satisfy due process, pretrial identifications resulting from a suggestive process must comport with the two-part analysis set forth by the United States Supreme Court in *Neil v. Biggers*."[12] First, Defendant must prove the identification was impermissible or unnecessarily suggestive.[13] If the Defendant meets his burden, the State must prove the unnecessarily suggestive identification would not lead to

---

[10] *Neil*, 409 U.S. at 198 (*citing Simmons*, 390 U.S. 384)
[11] *Id.*
[12] *Byrd v. State*, 2011 WL 3524420, at *3 (Del.)
[13] *Id.*

11

misidentification in court.[14]  The likelihood of misidentification depends on the following factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[15]

If this Court determines the out-of-court identification is inadmissible, then so is the in-court identification, unless it "did not result from the earlier confrontation ... but was independent thereof.[16]  In *Hubbard*, the Court found nothing improper about the victim's pretrial identification and rejected defendant's argument that the unequivocal in-court identification was impermissibly tainted by the suggestive pretrial identification.[17]  Also, in *Smith*, the Delaware Supreme Court held that although unnecessary suggestiveness tainted the out-of-court confrontation procedures, the in-court identifications were not unreliable as to warrant reversal.[18]

Here, there is no substantial likelihood of misidentification and as discussed above, the *Neil v. Biggers* factors have been satisfied.  For the reasons stated above, the Court finds Witness 1, Witness 4, and Witness 2's pretrial identifications of Mr.

---

[14] *Id.*
[15] *Biggers*, 409 U.S. at 198.
[16] *Byrd*, 2011 WL 3524420, at *3.
[17] 782 A.2d 264 (Del.2001).
[18] *Smith v. State*, 352 A.2d 765 (Del.1976).

Talley are not impermissibly suggestive and are reliable, and therefore, their future in-court identifications of Mr. Talley are admissible at trial, consistent with each witness's previous testimony or relationship with Mr. Talley.

## CONCLUSION

Based on the forgoing, (1) Defendant's Motion to Suppress the single photo identification from Witness 1 is **DENIED**; (2) Defendant's Motion to Suppress the six-pack photo line-up from Witness 4 and 2 is **DENIED**; and (3) Defendant's Motion to Suppress In-Court identifications is **DENIED.**

**IT IS SO ORDERED.**

**/s/ Calvin L. Scott**
**Judge Calvin L. Scott, Jr.**

13