## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE     )
                            )
    **v.**                  )      **Case No.: 2209010579**
                            )
**JAVON TURNER,**        )
                            )
    **Defendant.**        )

*SUBMITTED: June 6, 2023*
*DECIDED: June 8, 2023*

## OPINION AND ORDER

*Upon Consideration of Defendant's Motion to Suppress:*

**DENIED**

Karin Volker, Deputy Attorney General, of THE DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State of Delaware.

Alanna Farber, Esquire, of THE OFFICE OF DEFENSE SERVICES, Wilmington, Delaware, for Javon Turner.

**JONES, J.**

## INTRODUCTION

Defendant Javon Turner stands charged with Possession of a Firearm by a Person Prohibited, Carrying a Concealed Deadly Weapon, and Resisting Arrest. He has now filed this, a motion to suppress an on-scene police identification that implicated him as a suspect in this case. In short, Mr. Turner argues the identification was unduly suggestive and violated his due process rights.

Having considered the parties' arguments at the May 26, 2023 suppression hearing, including the testimony of the officers involved in identifying Mr. Turner, the Court finds the police on-scene identification of Mr. Turner was reliable. Accordingly, for the reasons that follow, Mr. Turner's motion must be **DENIED**.

## FACTUAL OVERVIEW

On September 21, 2022, Officers Roy and Gervasi of the Wilmington Police Department were on proactive patrol at the intersection of 23rd and Bowers Streets in Wilmington, Delaware.[1] While there, they noticed a blue Toyota CHR travelling northbound on Bowers Street.[2] The officers were aware that a blue Toyota CHR with matching plates had been stolen during an armed carjacking in nearby Chester, Pennsylvania a few weeks before.[3]

After observing the Toyota, the officers activated their emergency equipment.[4] When they did so, the Toyota took off.[5] The officers gave pursuit.[6] During the

---

[1] Supp. Hr'g. Tr. (May 26, 2023) at 5:3-5.
[2] *Id.* at 5:22-23; 6:1.
[3] *Id.* at 6:14-18.
[4] *Id.* at 8:19-20.
[5] *Id.* at 9:10-11.
[6] *Id.* at 9:17-19.

chase, Officer Gervasi observed two young black males in the Toyota's driver and passenger seat.[7]

The Toyota eventually came to a stop in the 2600 block of Bowers Street.[8] There, the two occupants exited the vehicle and fled in separate directions.[9] According to Officer Gervasi, the occupant from the driver's seat wore a black sweatshirt and green pants, and the passenger side occupant wore a grey sweatshirt and black pants.[10]

Officers Gervasi and Roy chased them on foot.[11] The passenger side occupant, who was later identified as Mr. Turner, turned around multiple times before and during the foot pursuit and made his face viewable to Officer Gervasi.[12] After Mr. Turner removed his grey sweatshirt in the area of 24th and Claymont Street, Officer Gervasi lost sight of him.[13] Officer Gervasi then returned to the abandoned Toyota and met Officer Roy, who had located a loaded semi-automatic firearm under the car's passenger seat.[14]

By this point, Officers Trent, Martin, and Linkhorst had arrived on scene to assist in locating the Toyota's occupants.[15] Officer Linkhorst quickly located the driver, later identified as Clyde Penny, in an alley near Claymont Street.[16] Upon receiving

---

[7] *Id.* at 8:14-15.
[8] *Id.* at 10:21-23; 11:1-2.
[9] *Id.* at 11:18-21.
[10] *Id.* at 12:4-9.
[11] *Id.* at 11:22-23; 12:1.
[12] *Id.* at 12:12-16; 13:8-11; 19:9-20.
[13] *Id.* at 13:8-11.
[14] *Id.* at 14:2-4, 53:1-10.
[15] *Id.* at 11:5-7; 14:17-18.
[16] *Id.* at 53:23; 54:1-2.

word of Mr. Penny's arrest, Officer Gervasi radioed that the occupant-at-large "ha[d] a grey hoodie on."[17]

Officer Martin then began to canvass the area.[18] He first went to a local Family Dollar to review video surveillance of the surrounding region.[19] But, finding nothing of evidentiary value, he returned to his vehicle and began on his way back to the abandoned Toyota.[20] As he drove through the 1300 block of East 24th Street, he observed Mr. Turner "emerge through two buildings . . . carrying a grey hooded [sweatshirt.]"[21] Mr. Turner stopped in his tracks when he saw Officer Martin, as if he was shocked.[22] Officer Martin subsequently detained Mr. Turner, placed him in the back of his patrol car, and requested Officer Gervasi respond to the scene for the purpose of identifying Mr. Turner.[23] Officer Gervasi arrived "five to ten minutes later" and positively identified Mr. Turner as the second occupant of the Toyota.[24]

## STANDARD OF REVIEW

To satisfy due process, pretrial identifications resulting from a suggestive process must comport with the two-part analysis set forth by the United States Supreme Court in *Neil v. Biggers*.[25]

First, the Court must assess whether an impermissibly or unnecessarily suggestive procedure, arranged by a state actor, procured the identification.[26] As

---

[17] *Id.* at 32:1-8.
[18] *Id.* at 63:10-12.
[19] *Id*. at 64:16-19.
[20] *Id.* at 64:18-19.
[21] *Id.* at 64: 8-11.
[22] *Id.* at 64:12-16.
[23] *Id.* at 64:19-20; 65:1-6.
[24] *Id.* at 66:6-14.
[25] *Byrd v. State*, 25 A.3d 761, 764 (Del. 2011).
[26] *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012); *see also Neil v. Biggers*, 409 U.S. 188, 197-99 (1972).

the Delaware Supreme Court has observed, the inquiry into whether an identification was impermissibly suggestive is "invariably fact-driven."[27] The defendant has the burden of proof in the first step of the *Biggers* analysis.[28]

If the defendant meets this burden, then the Court must determine whether, because of that impermissible suggestion, the identification is not constitutionally "reliable" – i.e., whether the identification presents "a very substantial likelihood of irreparable misidentification."[29] The *Biggers* Court articulated five factors to aid in assessing reliability. Each of these factors arises in the usual context of a selective identification, in which a witness must select and identify a stranger after a crime:

> First, the witness's opportunity to view the criminal at the time of the crime; second, the witness's degree of attention at the time of the crime; third, the accuracy of the witness's prior description of the defendant; fourth, the witness's level of certainty when identifying the suspect at the confrontation; and fifth, the length of time that has elapsed between the crime and the confrontation.[30]

In sum, the Supreme Court's constitutional due process analysis addresses the particular risks that impermissible suggestion can create during the identification of an unknown perpetrator after a crime. That analysis accommodates several different concerns, including protecting the due process rights of the defendant, deterring police misconduct, and allowing the factfinder to hear and weigh identification evidence that is sufficiently reliable from a constitutional perspective.[31] A jury, of course, is perfectly capable of weighing the pluses and minuses of such an

---

[27] *Richardson v. State*, 673 A.3d 144, 147 (Del. 1996).
[28] *Byrd*, 25 A.3d at 764.
[29] *Manson v. Brathwaite*, 432 U.S. 98 at 110, 114 (1977).
[30] *Byrd*, 25 A.3d at 764 (citing *Biggers*, 409 U.S. at 199).
[31] *Biggers*, 409 U.S. at 199.

identification. That is why mere suggestiveness, in and of itself, does not *per se* call for exclusion of identification.[32]

## ANALYSIS

For present purposes, the Court will assume without deciding that Officer Gervasi's identification of Mr. Turner was impermissibly suggestive. In light of that assumption, the Court need not address the first *Biggers* prong, and, instead, will move to the five-factor reliability test.

The Delaware Supreme Court's holding in *Richardson v. State* is instructive in implementing that test.[33] *Richardson* tasked the Supreme Court with determining whether, under *Biggers*, the "show-up" identification of a handcuffed defendant standing next to an officer at a police station was sufficiently reliable.[34] The identifying witness in *Richardson*, who was surrounded by relatives as she made the identification, observed the defendant through a window one hour and fifteen minutes after the crime.[35] Based on these facts, *Richardson* found the identification to *not* be impermissibly suggestive, and that even if it was, under the totality of the circumstances it was sufficiently reliable.[36] Thus, the *Richardson* identification satisfied both prongs of the *Biggers* test.[37]

Here, as in *Richardson*, the Court concludes that Officer Gervasi's identification of Mr. Turner was reliable under *Biggers*. As Officer Gervasi testified, he observed

---

[32] *Biggers*, 409 U.S. at 199.
[33] *See generally id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 148.
[37] *Id.*

Mr. Turner's face multiple times while chasing him both in vehicle and on foot.[38] He also noticed that Mr. Turner wore a grey sweatshirt and watched as he removed the sweatshirt amid the pursuit.[39] Officer Gervasi focused on Mr. Turner during both the vehicle and foot chases, and, according to he and Officer Martin, positively identified Mr. Turner as the occupant from the passenger side of the Toyota twenty minutes after last seeing him.[40] The Court has no doubt that Officer Gervasi's certainty in the identification was aided by the recognition of Mr. Turner's face and clothing, as well as his physical characteristics.[41]

In light of the above, the Court is satisfied that Officer Gervasi's identification of Mr. Turner was reliable as enunciated in *Biggers*. No further consideration of the first *Biggers* factor – including whether Officer Gervasi's identification was a "show-up" or "police identification," as the parties dispute – is necessary.

## CONCLUSION

For the above reasons, Mr. Turner's motion to suppress is **DENIED**.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:  *Original to Prothonotary*
    Karin Volker, Deputy Attorney General
    Alanna Farber, Assistant Public Defender

---

[38] *Id.* at 12:12-16; 13:8-11; 19:9-20.
[39] *Id.* at 13:9-11.
[40] Tr. at 44:7-17; 66:11-14; 83:14-19. Mr. Turner's post-hearing argument makes repeated mention of credibility issues with respect to the officers' testimony at the suppression hearing. But based on the totality of the evidence, the Court finds the alleged credibility issues do not rise to a level warranting disregard of their testimony. The jury may see things differently, but that is for it – and not the Court – to decide following the presentations of evidence at trial.
[41] *Id.* at 37:2-6. At the suppression hearing, Officer Martin testified that he took note of Mr. Turner's physical characteristics during the vehicle and foot chases.