# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. No. 1808022193 |
| | ) | |
| KENNETH APPIAH, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

Date Submitted:  May 30, 2023
Date Decided:  August 28, 2023
Date Corrected:  August 30, 2023[1]

## MEMORANDUM OPINION

*Defendant's Motion for Postconviction Relief*: **DENIED**
*Defendant's Motion for Rule 61 Discovery*: **DENIED as MOOT**
*Postconviction Counsel's Motion to Withdraw*: **GRANTED**

Julie M. Donoghue, Deputy Attorney General, Department of Justice, 820 N. French St., Wilmington, Delaware 19801.  Attorney for the State of Delaware.

Christopher S. Koyste, Law Office of Christopher S. Kosyte LLC, 709 Brandywine Blvd., Wilmington, Delaware 19809.  Attorney for Defendant.

Kenneth Appiah, *pro se.*

**JURDEN, P.J.**

---

[1] The cover page has been corrected to reverse the order of the parties.

# I.  INTRODUCTION

Defendant Kenneth Appiah was convicted by a jury of Burglary First Degree and related charges after he broke into his former roommate's home, firing two gunshots before fleeing.  The Supreme Court affirmed Appiah's convictions on direct appeal, and he now seeks postconviction relief.  For the reasons set forth below, Appiah's Motion for Postconviction Relief is **DENIED**, Appiah's "Motion Seeking DNA and Gunshot Residue Testing of Evidence, Rule 61 Discovery" is **DENIED as MOOT**, and Postconviction Counsel's Motion to Withdraw is **GRANTED**.

# II.  BACKGROUND[2]

## A.  The Attempted Robbery

Around 7:00 p.m. on December 13, 2017, Aruna Kanu, his girlfriend, and their son were in their home when a man wearing a black outfit and black mask unlocked the apartment door with a key, entered, brandished a gun, and gestured like he was demanding money.[3]  Kanu went into the primary bedroom, where his girlfriend and son were, and locked the door shut.[4]  The intruder fired two gunshots through the bedroom door, hitting the son's crib and a wall.[5] Kanu's girlfriend dialed

---

[2] The Court has drawn the facts from the appendices attached to the briefing and the Delaware Supreme Court's findings on direct appeal.  Where appropriate, the Court will cite to specific items in the record.  Items in the appendix are denominated using "A[#]."  *See Appiah v. State*, 244 A.3d 681, 2020 WL 7625353 (Del. Dec. 22, 2020) (TABLE).

[3] A145-46, A148-49.

[4] A149-50.

[5] A113.

2

911 and handed the phone to Kanu, who told the operator that he had been shot several times (he had not).[6] The intruder fled.

When police arrived, Kanu said that he believed the intruder was his former roommate, but at the time could not remember the roommate's name.[7] Appiah, the former roommate to whom Kanu was referring, rented a room from Kanu for approximately two weeks before breaking the seven-month verbal rental agreement with Kanu and vacating the apartment.[8] After Appiah left, Kanu refused to return his security deposit.[9] So, as collateral for his security deposit, Appiah retained the keys to the apartment.[10] Appiah unsuccessfully sought police help to get his deposit back, but they explained that the issue was a civil matter.[11] Appiah then began texting Kanu about the deposit.[12] Kanu never returned it, and began renting the room to Ricardo Campbell.[13]

At the scene, police collected two spent .32 caliber shell casings from outside the bedroom door, and a projectile from the baby's crib.[14] Body-worn camera

---

[6] A110-11, A127, A161.

[7] A161, A165. Kanu eventually advised officers the intruder's name was Appiah. *See id.*; *see also* Jury Trial Tr. 101:7-9, D.I. 65.

[8] A139-140.

[9] A140-143.

[10] *Id.*

[11] A126, A141.

[12] A141-44. In a final October 16, 2017 text, Appiah told Kanu, "you need to stop playing with me." A144.

[13] A118, A144-45.

[14] A113, A115. The other projectile was lodged in the drywall and therefore could not be recovered. A113.

footage from one of the responding police officers showed an officer going into Campbell's room and commenting that it "smel[ed] like T16."[15] That same officer pointed out a drug scale and drug packaging.[16]

About forty-five minutes after the incident, officers responded to Appiah's residence, which was about nine miles away.[17] When they arrived, Officer Przeworski, one of the responding officers, touched the hood of Appiah's car and noted that it was cold.[18] Twenty minutes later, Appiah, who was wearing all black clothing, exited his apartment building and approached the officers.[19] Officer Przeworski patted down Appiah for weapons, but none were recovered.[20] Appiah claimed he had been helping his children with homework since 4:00 p.m.[21] The officers did not arrest Appiah.[22] Two days later, police interviewed Appiah again.[23] Appiah admitted that he owned a .32 caliber handgun (but claimed he had never fired it) and provided a DNA sample.[24] Police seized the gun for testing.[25] In July 2018, the gun, the recovered shell casings, and the recovered projectile were tested.[26]

---

[15] A133.
[16] *Id.*
[17] A130.
[18] *Id.*
[19] A130-A131.
[20] A132.
[21] A131.
[22] A132.
[23] A165.
[24] A166, A168, A170. Appiah stated he had sole possession of the handgun. A402.
[25] A166.
[26] A166-A167, A181.

Robert Freese, an independent forensic firearms examiner who was contracted by the Delaware State Police,[27] conducted the tests and concluded the shell casings were fired from the same gun, and were consistent with having come from Appiah's gun.[28] However, Freese could neither identify nor eliminate the projectile as having been fired from Appiah's gun.[29] On August 31, 2018, police arrested Appiah.[30]

## B.    Trial, Post-Trial Motion, and Sentencing

A grand jury indicted Appiah for Home Invasion, Burglary First Degree, five counts of Possession of a Firearm during the Commission of a Felony, Attempted Robbery First Degree, three counts of Reckless Endangering First Degree, and Criminal Mischief.[31] Appiah elected to go to trial, which spanned four days – March 12, 2019, March 13, 2019, March 18, 2019, and March 19, 2019.[32]

On the second day of trial, Trial Counsel lodged an objection and later moved for a mistrial, arguing she did not receive prior inconsistent statements made by Kanu. During the State's direct examination of Kanu, the Court called counsel to sidebar to address its "concern about the accuracy and integrity of the record" because it was unclear what kind of head covering Kanu was trying to describe.[33]

---

[27] A171.
[28] A42, A180.
[29] *Id.*
[30] D.I. 1.
[31] Indict., D.I. 4.
[32] D.I. 27.
[33] A147.

5

During the conference, Trial Counsel stated Kanu's testimony was inconsistent with the discovery she received, and asked if Kanu had any pretrial meetings in which he made similar statements.[34] The State said Kanu had a meeting with a Department of Justice social worker and the prosecutor a week or two prior to trial.[35] Trial Counsel lodged an objection that she had not been "provided with the social worker's notes, or the prosecutor's notes, with these inconsistent statements," and asked for those materials.[36] The Court instructed the State to get the notes, noting the inconsistencies would be "great fodder" on cross-examination.[37] The State resumed its direct examination of Kanu, and Trial Counsel again objected, arguing that Kanu was testifying inconsistently from the discovery provided to Trial Counsel.[38] The Court again stated the inconsistencies could be explored on cross-examination.[39]

Upon the conclusion of the State's direct examination of Kanu, the Court ordered the State to complete any necessary redactions to the social worker's notes and then provide those notes to Trial Counsel.[40] After reviewing the social worker's notes, Trial Counsel moved for a mistrial, arguing the State violated *Brady* on two

---

[34] A147. Kanu testified that the intruder pointed a gun at him and wore a "cap, disguised as a mask" that left the eyes, nose, and mouth exposed. A146.

[35] A147.

[36] *Id.*

[37] *Id. See also* A152-53.

[38] A150. Kanu stated for the first time at trial that the baby was in the crib when the shots were fired; however, that appeared to be a miscommunication because on cross-examination he testified that the baby was on the bed. A150, A163.

[39] A151.

[40] A152-53.

grounds.[41]  First, she argued that the notes about the head covering were inconsistent with the discovery materials she received and the State's opening statement referring to it as a "mask."[42]  Second, she argued that Kanu's testimony that the gun was pointed at his head was inconsistent with the discovery provided to her, and although the State knew Kanu might testify to that on the stand, it did not disclose the inconsistent information to Trial Counsel.[43]  Trial Counsel argued that "a big part of [her] consultations" with Appiah regarding defense strategy centered around whether the intruder's face was visible and therefore sought a mistrial,[44] and that had she known Kanu would testify a gun was pointed at him, she would have introduced contradicting body-worn camera footage where he indicates with his hands the gun was pointing elsewhere.[45]

The Court denied the Motion for a Mistrial on both grounds.  As to Trial Counsel's first argument, the Court highlighted that if the State's opening statement mirrored the information Trial Counsel had received, the State did not act with "ill intent."[46]  The Court found there was no prejudice because the only discrepancy was

---

[41] *See* A154-55.

[42] A154-55.

[43] A156.

[44] A155.

[45] A156.

[46] A154.  The Court stated:

> The fact that you just said that [Kanu's] statements under oath today in front of the Jury are inconsistent with what the State said the evidence would show in its opening shows me that there is no ill intent by Mr. Bloom about not producing these

whether the intruder's mouth was exposed, and that could be explored on cross-examination.[47]  As to Trial Counsel's second argument, the Court held Appiah was not prejudiced because Trial Counsel still had the opportunity to show the body-worn camera footage on cross-examination.[48]  The Court allowed Trial Counsel the lunch break to prepare for her cross-examination in light of the notes and body-worn camera footage.[49]

After the lunch break, Trial Counsel requested "*all* of the notes of the Department of Justice's investigator, social worker, or Attorney General notes regarding any interviews with any witnesses," arguing that she only received the social worker's notes regarding one of Kanu's statements.[50]  The Court asked the State whether there were "any other discoverable notes that should be produced."[51]  The State responded that it had produced all *Brady* material.[52]  The State told the Court that none of the notes contained any inconsistencies with Kanu's testimony on the stand and therefore they were not impeachment evidence.[53]  The State

---

pretrial statements made a week or two ago because he was operating under the assumption of what he told the Jury.
*Id.*
[47] A155.
[48] A156.
[49] *Id.*
[50] A157 (emphasis added).
[51] A158.
[52] *Id.*
[53] *Id.*

8

contended that because the notes did not contradict the "key portions of the charges," they were not material.[54]  The Court ruled that there was no *Brady* violation.[55]

In all, the State introduced the following evidence to prove Appiah was the culprit: Kanu's testimony identifying Appiah as the intruder,[56] Appiah's admission that he owned a .32 caliber handgun,[57] Freese's testimony as a firearms forensics expert that the shell casings collected from the scene matched Appiah's handgun,[58] text messages between Appiah and Kanu,[59] and Appiah's key access to the apartment.[60]  The defense argued Appiah was not the perpetrator.[61]  On March 18, 2019, Trial Counsel moved for Judgment of Acquittal, which the Court denied.[62] After deliberating for approximately five hours, at 3:45 p.m. the jury submitted a jury note stating they could not reach a unanimous decision as to whether Appiah was the true defendant.[63]  The Court, the State, and Trial Counsel (who first

---

[54] *Id.*
[55] *Id.*
[56] A161.
[57] A166, A402.
[58] A180.
[59] A141-44.
[60] A140-41, A145.
[61] Trial Counsel Aff., D.I. 116.
[62] A250-254.
[63] Jury Note Tr. 2:8-14, D.I. 77.  The jury advised the Court in the jury note that:
> Your Honor, we, the jury, cannot come to a unanimous decision to determine if Kenneth Appiah should be the true defendant in this case.  We are at an 11 to 1 split.  Therefore, we cannot go through the other counts without coming to a decision on this matter.  Is there any guidance you can provide us on this, thank you.

*Id.*

9

discussed it with her client) agreed an *Allen* charge should not be given.[64] The Court asked the jury, which was only *voir dired* through that day, whether additional deliberations would be fruitful; in response, the foreperson said the jury was willing to come back the next day.[65] The Court adjourned for the day and the jury returned the next morning to continue its deliberations.[66] After the additional day of deliberations, the jury found Appiah guilty of Burglary First Degree, five counts of PFDCF, Aggravated Menacing (the lesser-included offense of Attempted Robbery First Degree), three counts of Reckless Endangering First Degree, and Criminal Mischief.[67] Appiah, through Trial Counsel, filed a Motion for a New Trial, arguing that his right to a fair trial was unfairly prejudiced because the State's misstatements during its closing and rebuttal arguments amounted to prosecutorial misconduct.[68] The Court denied the motion, finding the challenged statements did not amount to prosecutorial misconduct.[69] On January 10, 2020, the Court sentenced Appiah to a total of seventeen years of unsuspended Level V time.[70]

---

[64] *Id.* at 3:2-16.

[65] *Id.* at 9:20–10:12.

[66] *Id.* at 13:12-17; *see also* A272.

[67] D.I. 27.

[68] Def.'s Mot. New Trial, D.I. 44. Appiah argued that the State's conclusory assertions that the recovered shell casings "matched" Appiah's firearm in its closing and rebuttal arguments constituted prosecutorial misconduct. In its closing argument, the State said, "officers recovered the defendant's firearm and shell casings, and they matched," and in its rebuttal argument said, "the firearm, the shell casings, the test-fired shell casings and shell casing recovered match." Jury Trial Tr. 12:23–13:2, 48:11-13, D.I. 41.

[69] Mem. Op. Den. Mot. New Trial, D.I. 52.

[70] Appiah was sentenced, effective September 1, 2018, as follows: for Burglary First Degree, 8 years at Level V, suspended after 2 years for decreasing levels of supervision; for each count of

## C. Direct Appeal

Appiah, through Appellate Counsel, raised two arguments on direct appeal. First, Appiah argued that by denying Trial Counsel's request to cross-examine Campbell (Kanu's roommate at the time of the incident) about the drug paraphernalia found in his room, the Court abused its discretion and denied Appiah his constitutional right to confrontation and a meaningful opportunity to present a complete defense.[71]  Appiah alleged three claims of error relating to the denial: (1) the evidence could have been used to show bias under D.R.E. 616; (2) the evidence could have been used to rebut the State's motive argument under D.R.E. 404(b); and (3) precluding the evidence violated the Confrontation Clause and Appiah's Due Process right to a fair opportunity to defend against the State's accusation.[72]

The Supreme Court rejected Appiah's claims, finding that the probative value of the evidence was outweighed by risk of confusion of the issues, undue delay, and unfair prejudice, and therefore the Superior Court did not abuse its discretion.[73]  The Supreme Court held it was "highly doubtful that the drug paraphernalia evidence

---

PFDCF, 3 years at Level V; for Aggravated Menacing, 5 years at Level V, suspended for 18 months at Level III; for each count of Reckless Endangerment First Degree, 5 years at Level V, suspended for 18 months at Level III; and for Criminal Mischief, a fine of $575.  Corrected Sentence Order, D.I. 74.

[71] *Appiah*, 2020 WL 7625353, at *1.

[72] *Id.* at *2.

[73] *Id.* at *2-3.  "The Superior Court did not abuse its discretion when it weighed the speculative and marginal relevance of the evidence against the prejudice to the State of allowing cross-examination on – at best – a tangential issue." *Id.* at *3.

would have affected the jury's decision" because the evidence was "speculative and minor in importance to other evidence of guilt such as the .32 caliber weapon, shell casings, Appiah's access to keys to the apartment, and Kanu's identification of Appiah as the intruder."[74] The Supreme Court further held that, assuming, *arguendo* the Superior Court had erred, Appiah's constitutional rights were not violated because the "error" would not have affected the outcome.[75]

Second, Appiah argued that the Court compromised his right to self-representation by denying his requests for new counsel or self-representation.[76] The Supreme Court held the Court did not abuse its discretion by denying Appiah's request for new counsel because it was not supported by good cause justifying a continuance of the trial.[77] The Supreme Court further held that Appiah's self-representation claim was "without merit" because he did not timely, clearly, and unequivocally request to represent himself before trial.[78]

---

[74] *Id.* at *4.
[75] *Id.*
[76] *Id.* at *4-5.
[77] *Id.* at *4.
[78] *Id.* at *5.
> The Superior Court was well within its discretion to deny the request when the same request was thoroughly considered a week before trial. Granting Appiah's request on the second day of trial would have delayed the trial and caused prejudice to the State, trial witnesses, and the court in a trial that was fully underway.

*Id.*

**D.** **Postconviction**

Because the procedural history of this postconviction matter is extensive and convoluted given Appiah's multiple filings and the timing of these filings, the Court finds a chronology would be helpful before engaging in its analysis of Appiah's postconviction claims.

- February 5, 2021: Appiah filed a Motion for Postconviction Relief ("First Postconviction Filing") *pro se*.[79] Appiah asserted five grounds for relief: (1) ineffective assistance of Trial Counsel for not requesting an identification instruction; (2) ineffective assistance of Trial Counsel for not requesting discovery of all police statements, body-worn camera footage, surveillance footage, and fingerprint and DNA analyses; (3) ineffective assistance of Appellate Counsel for not appealing the denial of Trial Counsel's request for the notes from Kanu's pretrial interviews; (4) the State's violation of *Brady/Jencks* for not producing the notes from Kanu's pretrial interviews; and (5) the State's violation of Appiah's Due Process rights for using materially compromised ballistic evidence because of Carl Rone's involvement.[80]

---

[79] Def.'s Mot. Postconviction Relief, D.I. 80 [hereinafter First Postconviction Filing].
[80] *Id.* Carl Rone was the former chief firearm ballistics expert for the Delaware State Police. He was suspended, pled guilty to theft, and left the police force. Randall Chase, *Ex-Police Ballistics Expert Pleads Guilty to Theft*, Associated Press (Oct. 25, 2018 2:32 p.m.), https://apnews.com/b1528a48342a4dcb9962fe4f19c30428.

13

- February 10, 2021: Appiah filed a Motion for Appointment of Counsel *pro se*.[81]

- March 11, 2021: Appiah filed an Amended Motion for Postconviction Relief ("Second Postconviction Filing") *pro se*.[82]  In the Second Postconviction Filing, Appiah asserts five claims: (1) ineffective assistance of Trial Counsel for not requesting an identification instruction and an *Allen* instruction; (2) the police's violation of Appiah's Due Process rights by using an unduly suggestive identification procedure that relied on an unreliable or compromised firearm expert report that involved Carl Rone; (3) the State's violation of *Brady/Jencks* for not producing the notes from Kanu's pretrial interviews; (4) ineffective assistance of Appellate Counsel for not appealing the denial of the motion requesting the notes from pretrial interviews Kanu; and (5) ineffective assistance of Trial Counsel for not requesting incident reports and body-worn camera footage of all officers who reported to Appiah's residence before Officer Przeworski arrived to check out Appiah's alibi.[83]  Aside from two small differences, the Second Postconviction Filing mirrors the First Postconviction Filing.  In the Second Postconviction Filing, Appiah supplements the ground for relief concerning the identification

---

[81] Def.'s Mot. Appt. Counsel, D.I. 79.
[82] Def.'s Am. Mot. Postconviction Relief, D.I. 81 [hereinafter Second Postconviction Filing].
[83] *Id.*

instruction, additionally claiming that Trial Counsel was ineffective for not requesting an *Allen* instruction.[84] In the ground for relief concerning discovery materials, he omits surveillance footage from his list of discovery materials that Trial Counsel allegedly failed to request.[85]

- April 26, 2021: The Court issued an Order for Appointment of Counsel pursuant to Rule 61(e)(2).[86]

- July 20, 2021: Christopher S. Koyste was appointed as Postconviction Counsel ("Postconviction Counsel").[87]

- June 24, 2022: Postconviction Counsel filed a Motion to Withdraw as Counsel ("Motion to Withdraw"), asserting that following a thorough investigation of the record, he believes Appiah's claims are meritless and he cannot ethically advocate for them, and no other potential meritorious postconviction claims exist.[88]

- August 15, 2022: Appiah filed another Amended Motion for Postconviction Relief ("Third Postconviction Filing") *pro se*,[89] and a Response to the Motion

---

[84] *Id.* at 3-4.

[85] *Id.* at 4.

[86] Order Appointment Counsel, D.I. 84. *See* Super. Ct. Crim. R. 61(e)(2).

[87] Appt. Postconviction Counsel, D.I. 88.

[88] Mot. to Withdraw, D.I. 98. Postconviction Counsel attached four appendices to his Motion to Withdraw. App. Vol. I, D.I. 99; App. Vol. II, D.I. 100; App. Vol. III, D.I. 101; App. Vol. IV, D.I. 102.

[89] Def.'s Am. Mot. Postconviction Relief, D.I. 108 [hereinafter Third Postconviction Filing].

15

to Withdraw ("Fourth Postconviction Filing").[90]  In the Third Postconviction Filing, Appiah raises ten grounds for relief: (1) ineffective assistance of Trial Counsel for not objecting to or moving to suppress Kanu's in-court identification of Appiah; (2) ineffective assistance of Trial Counsel for not requesting an identification instruction;[91] (3) ineffective assistance of Trial Counsel for not requesting a *Lolly*/*Deberry* instruction; (4) ineffective assistance of Trial Counsel for not hiring an "effective expert" to cross-examine and/or impeach the State's expert witness; (5) ineffective assistance of Postconviction Counsel for not hiring an "effective" ballistics expert to aid

---

[90] Def.'s Resp. Mot. to Withdraw, D.I. 107 [hereinafter Fourth Postconviction Filing].  Although the Fourth Postconviction Filing is styled as a response to Postconviction Counsel's Motion to Withdraw, the Fourth Postconviction Filing simply reiterates nine of the ten grounds for relief raised in the Third Postconviction Filing, omitting only the cumulative error claim.  Appiah asserts the following claims: (1) ineffective assistance of Trial Counsel for not objecting to Kanu's in-court identification of Appiah; (2) ineffective assistance of Trial Counsel for not requesting an identification instruction; (3) ineffective assistance of Trial Counsel for not requesting a *Lolly*/*Deberry* instruction; (4) ineffective assistance of Trial Counsel for not hiring an "effective expert" who could cross-examine and/or impeach the State's forensic firearms expert; (5) ineffective assistance of Appellate Counsel for not appealing the denial of the Motion for Judgment of Acquittal on the charge of Burglary First Degree; (6) ineffective assistance of Trial Counsel for not hiring an independent examiner to test the glove for DNA and gunpowder residue, and the swabs collected from the shell casings for potential DNA; (7) ineffective assistance of Postconviction Counsel for not hiring an independent examiner to test the glove for DNA and gunpowder residue, and the swabs collected from the shell casings for potential DNA; (8) ineffective assistance of Trial Counsel for not requesting a continuance so she could call the officer who observed drug paraphernalia in Campbell's room; (9) ineffective assistance of Postconviction Counsel for not hiring an "effective expert" who could cross-examine and/or impeach the State's forensic firearms expert.  Appiah also requested that the Court appoint new postconviction counsel.
[91] This ground for relief was contained within the claim that Trial Counsel was ineffective for not objecting to or moving to suppress Kanu's in-court identification of Appiah, however the Court has separated the two claims for clarity.  *See id.* at 3.

16

in Appiah's defense;[92] (6) ineffective assistance of Appellate Counsel for not appealing the denial of the Motion for Judgment of Acquittal on the Burglary First Degree charge; (7) ineffective assistance of Trial Counsel for not hiring an independent examiner to test for DNA and gunpowder residue; (8) ineffective assistance of Postconviction Counsel for not hiring an independent examiner to test for DNA and gunpowder residue;[93] (9) ineffective assistance of Trial Counsel for not requesting a continuance to subpoena the police officer who observed drug paraphernalia in Kanu's apartment; and (10) cumulative error.[94]

- August 18, 2022: The Court issued an Order Directing Expansion of the Record.[95] Because Appiah raises additional ineffective assistance of counsel claims in the Third Postconviction Filing, the Court ordered Trial Counsel and Appellate Counsel to file affidavits and any materials that respond to the specific claims against each of them.[96]

---

[92] This ground for relief was contained within the claim that Trial Counsel was ineffective for not hiring an "effective expert," however the Court has separated the two for clarity. *See id.* at 17.

[93] This ground for relief was contained within the claim that Trial Counsel was ineffective for not hiring an independent examiner, however the Court has separated the two for clarity. *See id.* at 21.

[94] *Id.*

[95] Order Directing Expansion R., D.I. 109. The Order was corrected on August 25, 2022 to fix a scrivener's error. Corrected Order Directing Expansion R., D.I. 110.

[96] Order Directing Expansion R., D.I. 109; Corrected Order Directing Expansion R., D.I. 110.

- December 8, 2022: Appiah filed a "Motion Seeking DNA and Gunshot Residue Testing of Evidence, Rule 61 Discovery" ("Motion for Rule 61 Discovery") *pro se*.[97]

- December 20, 2022: Trial Counsel filed her affidavit.[98]

- January 6, 2023: The Court held a teleconference to address the increasingly convoluted record in light of Appiah's Third and Fourth Postconviction Filings.[99] The Court stated it would construe the filings as responses to Postconviction Counsel's Motion to Withdraw, interpreting the responses to mean Postconviction Counsel erred in failing to raise the additional claims.[100] The State agreed the claims related back to Appiah's first filing.[101] The Court requested that Postconviction Counsel address why he believed two of Appiah's newly-raised claims lacked merit in a "Response to the Court's Questions."[102]

- January 11, 2023: Appellate Counsel filed her affidavit.[103]

---

[97] Def.'s Mot. Postconviction Disc., D.I. 113. Appiah also filed a letter requesting that the Court relieve Postconviction Counsel and appoint new counsel. Def.'s Letter, D.I. 112.
[98] Trial Counsel Aff., D.I. 116.
[99] Teleconference Tr., D.I. 128.
[100] *Id.* at 11:12-17. The Court stated:
> [R]ather than try and go back and tell him again what he needs to do, I'm just going to interpret his new filing as a response and draw from it what I can to see why he objects to your finding of no merit on the various claims. I think that's the most expeditious way to handle this.

*Id.*
[101] *Id.* at 13:6-7.
[102] *Id.* at 28:3-14.
[103] Appellate Counsel Aff., D.I. 121.

- January 27, 2023: Postconviction Counsel filed a Response to the Court's Questions.[104]

- March 7, 2023: The Court set a Postconviction Scheduling Order.[105] The Court ordered Trial Counsel to address two of Appiah's grounds for relief that were not previously addressed in a supplemental affidavit.[106]

- March 29, 2023: Trial Counsel filed a supplemental Affidavit of Response.[107] Trial Counsel addressed two grounds for relief to which she had not previously responded.[108]

- April 28, 2023: The State filed its Response in Opposition to the Defendant's *Pro Se* Motions for Postconviction Relief.[109]

- May 30, 2023: Appiah filed his Reply Brief.[110] In the Reply Brief, Appiah reasserts an amalgamation of the above claims.[111]

---

[104] Postconviction Counsel's Resp. to Ct.'s Questions, D.I. 122.

[105] Postconviction Scheduling Order, D.I. 124.

[106] *Id.* ¶ (a).

[107] Trial Counsel's Suppl. Aff., D.I. 129.

[108] *Id.* Trial Counsel's supplemental affidavit addressed Appiah's claims regarding the *Allen* instruction and the request for discovery material.

[109] State's Resp., D.I. 134. The State attached an Appendix to its Response. State's Resp. App., D.I. 135.

[110] Def.'s Reply Br., D.I. 137. Appiah attached an Appendix to his Reply Brief. Def.'s Reply Br. App., D.I. 138.

[111] Appiah lists the following twelve claims: (1) "interest of justice requires a review of Appiah's claims that the State violated *Jencks/Brady*, and Appellate Counsel was constitutionally ineffective for failing to appeal *Jencks/Brady* violation on direct appeal;" (2) "Appiah's claim about the State's out-of-court identification procedure and Mr. Rone's involvement should be considered in the interest of justice;" (3) "Trial Counsel was constitutionally ineffective for failing to request a jury instruction on eyewitness identification and an *Allen* instruction;" (4) "Trial Counsel was constitutionally ineffective for failing to object to, or move to suppress Kanu's in-court

19

## III. STANDARD OF REVIEW

A defendant may move under Superior Court Criminal Rule 61 for postconviction relief.[112] Rule 61 "balance[s]" the law's interest in conviction finality "against . . . the important role of the courts in preventing injustice."[113] Although the availability of collateral review reintroduces uncertainty into completed criminal proceedings, the ("extremely rare") possibility of undetected innocence or a comparable miscarriage of justice overrides its disruptive effects.[114]

In the generic case, however, there must be a "definitive end to the litigable aspect of the criminal process."[115] Collateral review "ensure[s] that individuals are not imprisoned" wrongly; it is not designed to correct minor "errors of fact."[116]

---

identification of Appiah as the intruder;" (5) "Trial Counsel was constitutionally ineffective for failing to request all police incident reports, police statements, body camera footage, surveillance footage, and fingerprint and DNA reports;" (6) "Trial Counsel was constitutionally ineffective for failing to request [a] *Lolly/Deberry* jury instruction;" (7) "Trial Counsel was ineffective for failing to hire an 'effective' expert;" (8) "Trial Counsel was ineffective for failing to hire an independent examiner to examine for DNA and gun shot residue on [] the black left-handed glove found in front of Kanu's apartment, [] the sample swabs collected from the casings found at the crime scene, and [] Appiah's gun;" (9) "Appellate Counsel was ineffective for failing to appeal the Motion for Judgment of Acquittal on the Burglary First Degree Charge;" (10) "Trial Counsel was ineffective for failing to seek a continuance to [sic] subpoena the officer who found evidence of drug dealing in Kanu's apartment to testify on the evidence, as the evidence was relevant to the credibility of State's witnesses in the form of bias and it was relevant to rebut the State's motive theory;" (11) "Defendant is entitled to discovery in this postconviction;" (12) "Defendant is entitled to relief for cumulative error." Def.'s Reply Br., D.I. 137.

[112] Super. Ct. Crim. R. 61.

[113] *Zebroski v. State*, 12 A.3d 1115, 1120 (Del. 2010).

[114] *Schlup v. Delo*, 513 U.S. 298, 321 (1995). *Accord Purnell v. State*, 254 A.3d 1053, 1122–23 (Del. 2021).

[115] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).

[116] *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

20

"Calibrated to screen for the wrongfully convicted, Rule 61 should not be used to launch *post hoc* strikes on issues inessential to a judgment of guilt."[117]

Rule 61 does not "allow defendants unlimited opportunities to relitigate their convictions."[118] To deter abusive collateral litigation, the standards and presumptions "adopted" under postconviction rules purposefully have made "winning [collateral] relief difficult[.]"[119] For example, a defendant seeking to invalidate a conviction must contend with a "presumption of regularity."[120] "The presumption of regularity attaches to all final judgments . . . and implies those judgments have been done rightly until contrary evidence appears."[121]

Before addressing the merits of any claim for postconviction relief, the Court must consult the four procedural bars in Rule 61(i).[122] Rule 61(i)(1) provides that a motion for postconviction relief is untimely if it is filed more than one year after a judgment of conviction is final.[123] Rule 61(i)(2) bars the consideration of successive

---

[117] *State v. Owens*, 2021 WL 6058520, at *10 (Del. Super. Dec. 21, 2021).
[118] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[119] *Brown v. Davenport*, 142 S. Ct. 1510, 1526 (2022).
[120] *E.g.*, *Parke v. Raley*, 506 U.S. 20, 29 (1992); *accord Xenidis v. State*, 2020 WL 1274624, at *2 (Del. Mar. 17, 2020).
[121] *Xenidis*, 2020 WL 1274624, at *2.
[122] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[123] Super. Ct. Crim. R. 61(i)(1).

motions.[124]  Rule 61(i)(3) bars procedurally defaulted claims.[125]  And Rule 61(i)(4)

bars consideration of any ground for relief formerly adjudicated in the case.[126]

## IV.  DISCUSSION

As the chronology makes clear, Appiah has filed numerous *pro se* motions

that contain multiple claims and raise repetitive and overlapping issues.[127]  This,

however, is Appiah's first time seeking postconviction relief, and the Court will

address each claim in turn.

Appiah is not procedurally barred under Rule 61(i)(1) because he first moved

for postconviction relief within a year after the judgment of conviction became

final.[128]  He is not procedurally barred under Rule 61(i)(2) because he has not filed

previous motions for postconviction relief.  With the exception of one claim,[129]

Appiah's ineffective assistance of counsel claims are not procedurally barred under

Rule 61(i)(3) or Rule 61(i)(4) because this proceeding is the first opportunity Appiah

has had to raise claims of ineffective assistance of counsel.  As will be discussed

---

[124] *Id.* at 61(i)(2).

[125] *Id.* at 61(i)(3).

[126] *Id.* at 61(i)(4).

[127] First Postconviction Filing, D.I. 80; Second Postconviction Filing, D.I. 81; Third Postconviction Filing, D.I. 108; Fourth Postconviction Filing, D.I. 107; Def.'s Mot. Postconviction Disc., D.I. 113, Def.'s Reply Br., D.I. 137.

[128] *See* Super. Ct. Crim. R. 61(i)(1).  Appiah's conviction became final when the Supreme Court of Delaware affirmed Appiah's convictions on direct appeal in an Order dated December 22, 2020. *See Appiah*, 2020 WL 7625353, at *1.  Appiah filed his first motion less than two months later on February 5, 2021.  *See* First Postconviction Filing, D.I. 80.

[129] Appiah's claim that Trial Counsel was ineffective because she did not request a continuance to subpoena the police officer who observed drug paraphernalia in Kanu's apartment fails under Rule 61(i)(4).  *See supra* Section IV.A.1.h.

later in this Memorandum Opinion, however, Appiah's Due Process claims are procedurally barred; one under Rule 61(i)(3),[130] the other under Rule 61(i)(4).[131]

## A.  Appiah's Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by the *Strickland v. Washington* two-prong test.[132]  To establish a claim of ineffective assistance of counsel under *Strickland*, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) prejudice, meaning that, but for counsel's unprofessional errors, there is a reasonable probability the result of the proceeding would have been different.[133]  To establish deficient performance, the burden is on the movant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer did."[134]  There is a strong presumption that counsel's performance was reasonable, and in particular, trial strategies and tactics made after a thorough investigation are "virtually unchallengeable."[135]  Managing defense strategy includes "making decisions about when and whether to object, which

---

[130] Appiah's claim that the police's use of an unduly suggestive identification procedure that relied on unreliable or materially compromised ballistic evidence violated his Due Process rights fails under Rule 61(i)(3).  *See supra* Section IV.C.2.

[131] Appiah's claim that the State violated *Jencks* and *Brady* fails under Rule 61(i)(4).  *See supra* Section IV.C.1.

[132] 466 U.S. 668 (1984).

[133] *Id.* at 688, 694.

[134] *Green v. State*, 238 A.3d 160, 174 (Del. 2020).

[135] *Id.* (internal quotation marks omitted).

witnesses to call, and what defenses to develop."[136] To establish prejudice, a movant "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[137] Failure to prove either prong will "doom [the] claim, and the Court need not address the other [prong]."[138]

1. Appiah's Claims Against Trial Counsel

a. *Trial Counsel did not request an identification instruction.*

Appiah argues that Trial Counsel was ineffective because she failed to request an identification instruction.[139] He argues that "no reasonable trial strategy" can explain Trial Counsel's failure to request the instruction, "because if Kanu did identify Appiah as the shooter it [sic] would not have taken the police eight months to arrest Appiah."[140] Although Trial Counsel requested an alibi instruction, Appiah argues it was not effective in this case because alibi was not the sole defense theory, and an identification instruction would have minimized the prejudice caused by the State's failure to conduct a photo line-up or live line-up prior to trial.[141] Appiah

---

[136] *Tucker v. State*, 2017 WL 5127673, at *3 (Del. Nov. 3, 2017).

[137] *Alston v. State*, 125 A.3d 676, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[138] *State v. Lindsey*, 2023 WL 2535895, at *6 (Del. Super. Mar. 16, 2023) (citing *Strickland*, 466 U.S. at 697; *Ploof*, 75 A.3d at 825).

[139] First Postconviction Filing 3-4, D.I. 80; Second Postconviction Filing 3-4, D.I. 81; Third Postconviction Filing 3-8, D.I. 108; Fourth Postconviction Filing 1-2, D.I. 107; Def.'s Reply Br. 5-7, D.I. 137.

[140] Third Postconviction Filing 8, D.I. 108.

[141] Fourth Postconviction Filing 2, D.I. 107. Appiah argues that, although Trial Counsel requested alibi and credibility jury instructions (which were given), the credibility instruction did not provide the jury with "meaningful guidance," and the alibi instruction "failed to inform[] or minimized the

24

maintains there is a reasonable probability he would not have been convicted if an identification instruction had been given because identification was a critical issue in this case.[142] In support of his argument, Appiah's points to the fact that one juror was struggling to determine whether Appiah was the "true defendant."[143]

Jury instructions fall within trial strategy.[144] If requesting a particular instruction would be inconsistent with the defense theory, counsel's decision not to request such an instruction is not objectively unreasonable.[145] Here, the defense theory was that Kanu was "biased against Appiah and was always going to believe" that the perpetrator was Appiah.[146] According to Trial Counsel, the issue was not whether Kanu misidentified Appiah, it was that someone else committed the crime but Kanu blamed Appiah.[147] Trial Counsel believed an identification instruction would clash with the defense theory, and instead requested an alibi instruction, which states:

> The defendant has raised the defense of alibi . . . The defendant contends that, when the crime was allegedly committed, the defendant was somewhere other than the place where the crime was allegedly

---

impact of Kanu's dubious in-court identification." First Postconviction Filing 3, D.I. 80; Third Postconviction Filing 7, D.I. 108.

[142] First Postconviction Filing 3-4, D.I. 80; Second Postconviction Filing 3, D.I. 81; Third Postconviction Filing 4-8, D.I. 108; Fourth Postconviction Filing 2, D.I. 107; Def.'s Reply Br. 5-7, D.I. 137.

[143] Third Postconviction Filing 7, D.I. 108.

[144] *State v. Dickinson*, 2012 WL 3573943, at *5 (Del. Super. Aug. 17, 2012).

[145] *See, e.g., id.* at *7; *see also State v. Taylor*, 2016 WL 1714142, at *7-8 (Del. Super. Apr. 26, 2016), *aff'd*, 150 A.3d 776, 2016 WL 6311117 (Del. Oct. 27, 2016) (TABLE).

[146] Trial Counsel Aff. ¶ 1, D.I. 116.

[147] *Id.*

committed. If the evidence on this defense raises a reasonable doubt about to the defendant's guilt, you must give the defendant the benefit of that doubt and find the defendant not guilty.[148]

Notably, the identification instruction and the alibi instruction are similar in that they both instruct the jury that it must be satisfied beyond a reasonable doubt that the defendant committed the crime.[149] As Postconviction Counsel noted when investigating Appiah's postconviction claims, Trial Counsel was "extremely thorough in reviewing and arguing for jury instructions."[150] After her thorough investigation, Trial Counsel reasoned that an identification instruction clashed with the defense theory and thus opted for an alibi instruction, which is not objectively unreasonable. Because Appiah's claim fails on the performance prong, the Court need not address prejudice.

---

[148] Del. Super. P.J.I. Crim § 5.61 (2010).
[149] *State v. Kellum*, 2010 WL 2029059, at *8 (Del. Super. May 19, 2020), *aff'd*, 12 A.3d 1154 (Del. 2011). *See* Del. Super. P.J.I. § 4.9 (2010), which states:
> An issue in this case is the identification of the defendant. To find the defendant guilty, you must be satisfied, beyond a reasonable doubt, that the defendant has been accurately identified, that the wrongful conduct charged in this case actually took place, and that the defendant was in fact the person who committed the act. If there is any reasonable doubt about the identification of the defendant, you must give the defendant the benefit of such doubt and find the defendant not guilty.

[150] Mot. to Withdraw 26, D.I. 98. *See also* Trial Tr. 222:18–223:19, 224:21–226:12, D.I. 65.

> b. *Trial Counsel did not request all police statements and reports, body-worn camera footage, surveillance footage, and fingerprint and DNA analyses.*

Appiah claims that Trial Counsel was ineffective because she did not request all police statements and reports, body-worn camera footage, surveillance footage, and fingerprint and DNA analyses.[151]

The record belies this. Trial Counsel's discovery request, dated September 17, 2018, requested all material discoverable under *Brady v. Maryland*,[152] any results or reports of scientific tests, and "[c]opies of all audio or videotapes, which may relate to the alleged incident in this case, including but not limited to, any law enforcement body-worn camera footage or in-camera footage."[153] The State provided all reports and camera footage.[154] Further, by requesting results or reports

---

[151] First Postconviction Filing 3-4, D.I. 80; Second Postconviction Filing 4, D.I. 81. According to Appiah, the evidence would have confirmed his alibi and thus proven his innocence, and as such, there is a reasonable probability that the outcome of the trial would have been different if it had been requested. He also claims that by failing to request these items, Trial Counsel waived his rights to these discovery materials. He does not, however, specifically allege what information from the materials would have supported his alibi. First Postconviction Filing 3-4, D.I. 80; Second Postconviction Filing 4, D.I. 81; Def.'s Reply Br. 10-11, D.I. 137.

[152] 373 U.S. 83 (1963). *See Wright v. State*, 91 A.3d 972, 987-88 (Del. 2014) (applying *Brady*). *Wright* states:

> Under *Brady* and its progeny, the State's failure to disclose exculpatory and impeachment evidence that is material to the case violates a defendant's due process rights . . . . There are three components of a *Brady* violation: (1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant.

*Id.* (internal quotation marks omitted).

[153] A21-A23.

[154] The State provided footage from six body-worn camera videos and redacted police reports (which it is not require to provide) in its initial discovery package sent on November 15, 2018, and

of scientific tests and all material discoverable under *Brady*, any fingerprint reports or DNA test results exculpating Appiah would have been produced if they existed, however none did.[155]  Accordingly, Appiah's claim is refuted by the record, which shows that Trial Counsel did request such evidence, and all the evidence, that actually exists, was produced.  This claim fails the performance prong, and therefore, the Court need not address the prejudice prong.

          c.      *Trial Counsel did not request an <u>Allen</u> charge*.

Appiah argues that Trial Counsel was ineffective for not requesting an *Allen* charge,[156] but fails to explain why this purported failure was objectively unreasonable.  In conclusory fashion, he claims he was prejudiced by the "error" because there is a reasonable probability he would not have been convicted if the instruction had been given.[157]  As noted above, jury instructions fall within trial strategy.[158]  When the jury is unable to agree, an *Allen* charge, which emphasizes the importance of jury deliberations and encourages a verdict, may be provided.[159]  Under some circumstances, however, an *Allen* charge can have a coercive effect.[160]

---

provided footage from nineteen additional body-worn cameras on four discs on February 27, 2019. A24-25, A27, A30.

[155] Trial Counsel asked the State if DNA was analyzed, but the DNA collected from Appiah was not tested.  Moreover, while a latent fingerprint was found on Kanu's apartment door, it belonged to Kanu.  A71-72.

[156] Second Postconviction Filing 4, D.I. 81; Def.'s Reply Br. 5-7, D.I. 137.

[157] Second Postconviction Filing 4, D.I. 81; Def.'s Reply Br. 5-7, D.I. 137.

[158] *Dickinson*, 2012 WL 3573943, at *5.

[159] *See* Del. Super. P.J.I. § 4.40 (2010).

[160] *See Desmond v. State*, 654 A.2d 821, 826 (Del. 1994) (explaining the factors used when determining whether an *Allen* charge is coercive).

Here, Trial Counsel was concerned that the eleven-to-one split among the jurors was in the State's favor, and thus an *Allen* charge "would allow the jury to reach a unanimous verdict of guilt rather than remain a hung jury, requiring a new trial."[161] The Court advised the parties, "I don't think, given the [jury] note, that an *Allen* charge is a good idea," but entertained argument on the issue.[162] After consulting with Appiah,[163] Trial Counsel told the Court that the defense agreed with the Court and argued against the *Allen* charge.[164] Trial Counsel had sound reason for her concern that an *Allen* charge would coerce the one hold-out juror, and after consulting with Appiah, she, in her professional opinion, believed the charge was inappropriate. Trial Counsel's strategic decision not to request an *Allen* charge was objectively reasonable. Because this claim fails the performance prong, the Court need not consider the prejudice prong.

> d. *Trial Counsel did not raise an objection to Kanu's in-court identification or move to suppress it.*

Appiah argues Kanu's in-court identification of him violated his Due Process rights because it was unreliable, and therefore, by not objecting to the identification or moving to suppress it, Trial Counsel was ineffective.[165] He states that "no

---

[161] Trial Counsel Suppl. Aff. ¶ 1, D.I. 129.
[162] Jury Note Tr. 3:2-5, D.I. 77.
[163] Appiah concedes Trial Counsel conferred with him on this issue. Def.'s Reply Br. 7, D.I. 137.
[164] Jury Note Tr. 3:8-14, D.I. 77.
[165] Third Postconviction Filing 3-8, D.I. 108; Fourth Postconviction Filing 1-2, D.I. 107; Def.'s Reply Br. 8-9, D.I. 137.

29

reasonable trial strategy" can explain Trial Counsel's failure to argue against the admissibility of Kanu's in-court identification because it would not have taken the police eight months to arrest Appiah if Kanu could have named Appiah as the intruder prior to the trial.[166] Appiah further argues that he was prejudiced because the outcome of the trial would have been different had Trial Counsel argued against the identification's admissibility, as evinced by the jury note expressing that identification was an issue for one juror.[167]

Counsel is the determining authority on whether to object.[168] Trial Counsel stated there was no legal basis for her to attack the admissibility of the identification.[169] The State similarly states that "no evidentiary rule would support an objection to Kanu's in-court identification, nor does case law support a motion to suppress the identification," and the only way to challenge Kanu's identification was

---

[166] Third Postconviction Filing 3-8, D.I. 108; *see also* Fourth Postconviction Filing 8, D.I. 107. According to Appiah, because Kanu had not previously identified Appiah through a photo line-up or live line-up, Kanu, who could not remember Appiah's name at the time of the crime, had no independent basis for the in-court identification. Third Postconviction Filing 3-8, D.I. 108; *see also* Fourth Postconviction Filing 2-7, D.I. 107. Appiah cites *Neil v. Biggers* in support of his argument that the identification was unreliable, but he misunderstands the law. *See* 409 U.S. 188, 199 (1972) (holding that the witness' identification originating from a suggestive show-up was reliable under the totality of the circumstances). *Biggers* concerns the admissibility of an identification originating from a suggestive identification procedure, and Delaware law does not apply *Biggers* to initial in-court identifications. *See id.* at 199; *see also Byrd v. State*, 25 A.3d 761, 765 (Del. 2011) (holding that *Biggers* does not apply to in-court identifications that do not come following an impermissibly suggestive pretrial identification).

[167] *See* Third Postconviction Filing 7, D.I. 108.

[168] *Cooke v. State*, 977 A.2d 803, 841 (Del. 2009) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J. concurring)).

[169] Trial Counsel Aff. ¶ 2, D.I. 116.

30

through cross-examination at trial.[170]  Absent an unduly suggestive pretrial identification procedure, Due Process is not invoked because questions regarding the reliability of a proposed in-court identification affect the weight of the identification, not its admissibility.[171]  Therefore, an allegedly unreliable in-court identification should be attacked on cross-examination.[172]  Trial Counsel did cross-examine Kanu about the inconsistencies between what he told police the night of the crime versus his in-court identification.[173]  Because there was not a legal basis for suppression of, or objection to, Kanu's in-court identification and his Due Process rights were not at stake, Trial Counsel was objectively reasonable in highlighting the inconsistencies in Kanu's testimony, rather than arguing that the identification was inadmissible.  Trial Counsel's performance was objectively reasonable; as such, the Court need not address the prejudice prong.

       e.    *Trial Counsel did not request a <u>Lolly/Deberry</u> instruction.*

Appiah argues that Trial Counsel was ineffective because she did not request a *Lolly*/*Deberry* instruction for "missing evidence."[174]  He claims the State (1) failed

---

[170] State's Resp. 32, D.I. 134.
[171] *Byrd*, 25 A.3d at 764, 767.
[172] *Id.* at 767.
[173] Jury Trial Tr., March 13, 2019, D.I. 65 100:1–105:1.  After Kanu testified that the head covering exposed more of Appiah's face than what he described to the police the night of the crime, Trial Counsel said, "that is not what you told officers, is it?"  *Id.* at 100:19.  She then read his statement from the police report, where Kanu said he could "only see eyes and nose."  *Id.* at 101:22.  Trial Counsel also cross-examined Kanu about his testimony that a gun was pointed at him.  *Id.* at 102:5–105:1.
[174] Third Postconviction Filing 9-11, D.I. 108; Fourth Postconviction Filing 2-3, D.I. 107; Def.'s Reply Br. 11-13, D.I. 137.

31

to collect and preserve gunpowder residue from Appiah's clothing and hands the night of the crime; (2) failed to conduct DNA comparison analyses on the shell casings collected from Kanu's apartment and a black glove allegedly found outside Kanu's apartment;[175] and (3) failed to perform gunpowder residue testing on Appiah's gun, which would show he did not fire it.[176] According to Appiah, failing to collect and test the evidence was a violation of his Due Process rights, necessitating a *Lolly/Deberry* instruction.[177] Rather than explain why the outcome of trial would have been different had the instruction been given, Appiah focuses on the fact that if the evidence had been provided, it would have exculpated him.[178]

If the State fails to gather or preserve physical evidence that it is has a duty to disclose under Superior Court Criminal Rule 16[179] or that falls under the scope of *Brady v. Maryland*,[180] the defendant may be entitled to an inference that the "missing evidence" would have been exculpatory.[181] Delaware case law does not require the

---

[175] *See* Third Postconviction Filing 9, D.I. 108; Third Postconviction Filing App. 421, D.I. 108. Only Appiah addresses the black glove – it was not admitted into evidence at trial.

[176] Third Postconviction Filing 9, D.I. 108; Fourth Postconviction Filing 3, D.I. 107; Def.'s Reply Br. 11-12, D.I. 137.

[177] Third Postconviction Filing 11, D.I. 108; Def.'s Reply Br. 13, D.I. 137.

[178] Third Postconviction Filing 11, D.I. 108.

[179] Superior Court Criminal Rule 16 requires that upon the defendant's request, the State shall permit the defendant to inspect and copy or photograph, *inter alia*, tangible objects and results or reports of scientific tests or experiments that are within the State's possession, custody or control, and are either material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant. Super. Ct. Crim. R. 16(a)(1)(C)-(D).

[180] *See supra* note 151.

[181] *Coleman v. State*, 289 A.3d 619, 626 (Del. 2023).

State to seek out exculpatory evidence or perform any specific testing on physical evidence it gathers.[182] As to the gunpowder residue – the State did not have a duty to collect and preserve gunpowder residue under Rule 16 because the State did not intend to use it in its case-in-chief,[183] and the record does not show that gunpowder residue was material to the preparation of Appiah's defense.[184] Nor did the State have a duty to collect and preserve gunpowder residue under *Brady*, because the State had no reason to believe it would have been exculpatory.[185] The remainder of Appiah's "missing evidence" argument fails because there is no duty to test evidence,[186] therefore the State's choice not to perform DNA testing or gunpowder residue testing does not necessitate a *Lolly/Deberry* instruction. Because a *Lolly/Deberry* instruction would have been inapplicable, Trial Counsel was not

---

[182] *Powell v. State*, 49 A.3d 1090, 1101 ("[F]or the police to have a duty to collect and preserve specific evidence, the police must have had a reason, at that time, to believe the evidence might be exculpatory . . . . [W]e have also held that 'the duty to *preserve* exculpatory evidence does *not* include a duty to *seek out* exculpatory evidence.'") (emphasis in original) (citing *Mason v. State*, 963 A.2d 139 (Del. 2009)); *Dennis v. State*, 2013 WL 1749807, at *3 (Del. Apr. 23, 2013) ("Delaware law does not require that the State perform any specific testing on the physical evidence that it gathers.").

[183] State's Resp. ¶ 58, D.I. 134.

[184] *Id.* ¶ 60.

> "Appiah has not shown – or alleged – that the allegedly missing evidence would be 'material' to preparing his defense. The record does not show the 'missing evidence' was central to Appiah's case, was important to establishing the elements of one of his crimes, or had an effect on the jury's decision to convict."

*Id.*

[185] *See id.* ¶¶ 58-59.

[186] The State does not have a duty to test evidence, only a duty to supply reports and results of tests it actually conducts. Here, the State did not conduct DNA or gunpowder residue testing. The duty to preserve exculpatory evidence does not include a duty to seek out exculpatory evidence. *Coleman*, 289 A.3d at 627 (quoting *Powell*, 49 A.3d at 1101).

objectively unreasonable for not requesting it. Because Appiah has not proved the performance prong, the Court need not analyze the prejudice prong.

>   *f.      Trial Counsel did not hire an "effective expert" to cross-examine and/or impeach the State's ballistics expert.*

Appiah argues that Trial Counsel was ineffective because she did not hire an "effective expert" to cross-examine and/or impeach the State's ballistic expert, Freese.[187] Appiah contends that he was entitled to his own expert,[188] and therefore the failure to hire one amounted to a "complete breakdown in the adversarial process."[189] Appiah claims that had an "effective expert" been hired, there is a reasonable probability that the jury would have discounted Freese's opinion.[190]

The decision not to hire an expert is a strategic one, and after investigation of the facts and law, it is virtually unchallengeable.[191] After reviewing the evidence, preparing a defense, and working with her office's in-house forensic firearms specialist, Trial Counsel did not believe hiring an outside ballistics expert would be

---

[187] Third Postconviction Filing 12-17, D.I. 108; Fourth Postconviction Filing 3, D.I. 107.

[188] Appiah relies on *State v. Gallaway,* 2015 WL 4460992, at *1 (Del. Super. July 16, 2015) (holding that the indigent defendant's trial was fundamentally unfair because he was not provided an expert to aid him in his defense).

[189] Third Postconviction Filing 12-17, D.I. 108; Def.'s Reply Br. 13-16, D.I. 137.

[190] Third Postconviction Filing 17, D.I. 108.

[191] *See Hinton v. Alabma*, 571 U.S. 263, 275 (2014) ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'"); *see also State v. Jackson*, 2014 WL 4407844 at *6 (Del. Super. Sept. 3, 2014) ("To be sure, the guarantee [of] assistance of counsel subsumes a right to access to expert testimony in appropriate cases. The Sixth Amendment does not require however, and this court will not undertake, a *Daubert*-like inquiry to determine if an expert consulted by defense counsel was 'qualified.'").

beneficial.[192]  This was confirmed by Master Sergeant Vincent Consiglio, a State Armorer at the Delaware Army National Guard, who Postconviction Counsel hired to investigate the ballistics evidence.[193]  After Consiglio reviewed Freese's reports and testimony and examined the firearm-related discovery and trial photographs, he reached the same conclusions as Freese.[194]  Trial Counsel investigated whether hiring an outside ballistics expert would be beneficial, and made a strategic and objectively reasonable choice not to hire one after she concluded doing so would not be beneficial.  Appiah has failed to prove that Trial Counsel's performance in this regard was objectively unreasonable, so the Court need not address prejudice.

> g.    *Trial Counsel did not hire an independent examiner to test for DNA and gunpowder residue.*

Appiah contends that Trial Counsel was ineffective because she did not hire an independent examiner to test the glove, the swabs collected from the shell casings, and Appiah's gun for DNA and gunpowder residue.[195]  Appiah does not explain why this was objectively unreasonable, stating only that he was prejudiced because the test results would have "tend[ed] to prove that someone else may have had access to the gun without Appiah's permission," and therefore the outcome of the trial would

---

[192] Trial Counsel Aff. ¶ 4, D.I. 116.
[193] Mot. to Withdraw 38, D.I. 98.
[194] *Id.*
[195] Third Postconviction Filing 21-22, D.I. 108; Fourth Postconviction Filing 4, D.I. 107; Def.'s Reply Br. 17-18, D.I. 137.

have been different.[196]   Trial Counsel did not hire an independent examiner because after her consultation with an in-house forensics specialist, she did not think additional testing would benefit her client.[197]  Trial Counsel's decision to act in the best interests of her client was objectively reasonable.  Because Appiah's failure to satisfy the performance prong disposes of this claim, the Court need not address prejudice.

> h.      *Trial Counsel did not request a continuance to subpoena the police officer who observed drug paraphernalia in Kanu's apartment.*

Appiah argues Trial Counsel was ineffective because she did not request a continuance to subpoena the police officer who observed drug paraphernalia in Campbell's room after the Court "prevented Appiah from introducing the drug evidence."[198]  He does not articulate how this was objectively unreasonable, but argues the officer's testimony was relevant to proving bias of the State's witnesses and undermining the credibility of the State's motive theory.[199]  According to Appiah, he was prejudiced because his constitutional rights to a complete defense and confrontation of witnesses were violated.[200]

---

[196] Third Postconviction Filing 22, D.I. 108.
[197] Trial Counsel Aff. ¶ 6, D.I. 116.
[198] Third Postconviction Filing 24, D.I. 108; *see also* Fourth Postconviction Filing 4-5, D.I. 107; Def.'s Reply Br. 20-21, D.I. 137.
[199] Third Postconviction Filing 23, D.I. 108.
[200] *Id.* at 24-25.

36

As a threshold issue, the Court must determine whether this ineffective assistance claim is procedurally barred because although it is now framed as an ineffective assistance of counsel claim, the underlying issue of admissibility of the drug paraphernalia was previously adjudicated at trial and on direct appeal. The Delaware Supreme Court has held that "the mere fact that a postconviction relief claim might bear some resemblance to a formerly adjudicated claim" will not trigger Rule 61(i)(4), but when there has been a prior, substantive adjudication of the underlying error, a claim will be deemed formerly adjudicated.[201] Here, the substance of Appiah's claim was adjudicated on the merits at trial and on appeal. When cross-examining Campbell, Kanu's roommate at the time of the crime, Trial Counsel attempted to introduce the fact that drug paraphernalia was found in Campbell's room, but upon the State's objection, the Court ruled that evidence was "too far afield."[202] After the Court took a recess for the day, Trial Counsel reargued that she should be allowed to "call in the officer who actually found those materials."[203] The Court repeated that the drug paraphernalia evidence was too far afield and failed under D.R.E. 403.[204] Furthermore, the Due Process claim embedded within Appiah's ineffective assistance of counsel claim lacks merit.

---

[201] *Green*, 238 A.3d at 175-76; *see also State v. Jones*, 2022 WL 2827004, at *6-7 (Del. Super. July 20, 2022), *aff'd*, *Jones v. State*, 294 A.3d 1079, 2023 WL 2577756 (Del. Mar. 20, 2023) (TABLE).
[202] Trial Tr., Mar. 12, 2019 81:16–85:18.
[203] *Id.* 125:15-16.
[204] *Id.* at 126:18–130:13.

There is no unfettered right to present any and all evidence – the Delaware Rules of Evidence set limits to ensure fair proceedings.[205] Here, because any probative value stemming from testimony about the drug paraphernalia was substantially outweighed by the potential for prejudice, the Court properly denied it. On appeal, the Supreme Court affirmed the judgment of this Court, deeming the evidence "speculative" and of "marginal relevance."[206]

Assuming, *arguendo*, that the claim is not procedurally barred as formerly adjudicated, it still fails. The decision whether to call a witness is a strategic decision.[207] Given the Court's rulings, Trial Counsel properly recognized that a continuance request to further pursue admission of the evidence would be unsuccessful.[208] She advocated for its admission twice, and she was not objectively unreasonable for not raising the losing argument a third time. Because this claim fails on the performance prong, the Court need not address the prejudice prong.

2. Appiah's Claims Against Appellate Counsel

a. *Appellate Counsel did not appeal the denial of Trial Counsel's request for the Department of Justice's notes from Kanu's pretrial interviews.*

Appiah contends that Appellate Counsel was ineffective because she failed to argue that the Superior Court abused its discretion when it allegedly denied Trial

---

[205] D.R.E. 102.
[206] *Appiah*, 2020 WL 7625353, at *3.
[207] *Sierra v. State*, 242 A.3d 563, 573-74 (Del. 2020).
[208] Trial Counsel Aff. ¶ 7, D.I. 116.

Counsel's request for the notes from Kanu's pretrial interviews ("the *Brady* issue")[209] on appeal.[210] Appiah asserts that Kanu's out-of-court pretrial statements were material to impeach Kanu's credibility, making the notes *Brady/Jencks* material, and therefore the Court's denial of Trial Counsel's request prejudiced him because he could not effectively cross-examine Kanu.[211] Appiah once again fails to explain how Appellate Counsel's conduct rises to the level of objectively unreasonable conduct. He simply states there is a reasonable probability that the outcome of the appeal would have been different.[212]

To be clear, the Court did not deny Trial Counsel's request. In fact, the Court ordered the State to provide copies of the social worker's notes to Trial Counsel prior to her cross-examination of Kanu,[213] which the State did.[214] Trial Counsel raised the *Brady* issue several times,[215] and the Court determined there was no *Brady* violation.[216] Therefore, Appiah's argument fails as a threshold matter because it is

---

[209] Appellate Counsel Aff. ¶¶ 13-15, D.I. 121; *see also* State's Resp. ¶¶ 20-25, D.I. 134.
[210] First Postconviction Filing 3-4, D.I. 80; Second Postconviction Filing 4, D.I. 81. In his Reply Brief, Appiah alters this argument, stating Appellate Counsel was ineffective because she failed to argue that by not producing the Department of Justice's investigator notes from Kanu's pretrial interview, the State violated *Jencks/Brady*. Def.'s Reply Br 1-2, D.I. 137.
[211] Second Postconviction Filing 3-4, D.I. 81. Def.'s Reply Br. 1-2, D.I. 137. *Jencks* only concerns the witness' own statements, not notes and summaries, and therefore is not applicable here. *See, e.g.*, *Hooks v. State*, 416 A.2d 189, 200 (Del. 1980). Trial Counsel conceded this was not a *Jencks* issue, and regardless, the State provided all *Jencks* material. A158.
[212] Second Postconviction Filing 4, D.I. 81; Def.'s Reply Br. 2, D.I. 137.
[213] A147, A152-53.
[214] A153. Any attorney work product was redacted. *Id.*
[215] A147-48, A150-51, A154-58.
[216] A154-56, A158. To the extent Appiah's argument refers to any other Department of Justice notes, the State represented that it had produced all *Brady* material and none of the notes contained

39

belied by the record. Because Appiah's claim is belied by the record, Appiah fails to prove Appellate Counsel was objectively unreasonable.[217] Accordingly, the Court need not address the prejudice prong.

> b. *Appellate Counsel did not appeal the denial of the Motion for Judgment of Acquittal on the Burglary First Degree charge.*

Appiah asserts that Appellate Counsel was ineffective because she failed to argue on appeal that the Superior Court erred when it denied Trial Counsel's Motion for Judgment of Acquittal on the charge of Burglary First Degree.[218] Appiah seems to argue that there was insufficient evidence for a rational trier of fact to find the essential elements of Burglary First Degree beyond a reasonable doubt.[219] He fails to explain how Appellate Counsel was objectively unreasonable and what prejudice he suffered as a result. He merely states that his insufficiency argument was strong.[220] The conclusory nature of this claim alone ends the inquiry.

---

any inconsistencies contradicting the "key portions of the charges," therefore they were not impeachment evidence. A158.

[217] In her affidavit, Appellate Counsel stated that she did not believe there was prejudice; therefore, she pursued what she believed to be a stronger claim. Appellate Counsel Aff. ¶¶ 14-15, D.I. 121. Because the record belies Appiah's claim, the Court need not address the reasonableness of Appellate Counsel's decision, but nonetheless emphasizes that Appellate Counsel was not required to raise all possible issues on appeal, and Appiah offers no explanation as to why his proffered argument is "clearly stronger." *See Ploof*, 75 A.3d at 831-32.

[218] Def.'s Resp. Mot. to Withdraw 3-4, D.I. 107; Def.'s Second Am. Mot. Postconviction Relief 18, D.I. 108; Def.'s Reply Br. 19, D.I. 137.

[219] Def.'s Resp. Mot. to Withdraw 3-4, D.I. 107; Def.'s Second Am. Mot. Postconviction Relief 18-21, D.I. 108.

[220] Def.'s Second Am. Mot. Postconviction Relief 21, D.I. 108.

Assuming, *arguendo*, that Appiah had substantiated his claim, he fails to prove Appellate Counsel was objectively unreasonable for waiving the argument. Appellate Counsel believed that the insufficiency argument lacked merit, especially in light of the standard, which is favorable to the State.[221] Given this, she made a strategic choice to forego that argument and raise arguments she believed were stronger. This was not objectively unreasonable. Accordingly, the Court need not address prejudice.

3.    Appiah's Claims Against Postconviction Counsel

Appiah claims that Postconviction Counsel was ineffective for failing to hire experts in his defense.[222] A claim of ineffective assistance of postconviction counsel is not viable, because there is no constitutional right to counsel in a postconviction proceeding.[223] The ineffective assistance of postconviction counsel claims fail.

---

[221] Appellate Counsel Aff. ¶¶ 17-19, D.I. 121. *See Burrell v. State*, 766 A.2d 19, 24-25 (Del. 2000) ("[The Supreme] Court reviews claims of insufficient evidence to determine whether, viewing all the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'").

[222] Appiah argues that Postconviction Counsel was ineffective because he failed to hire an "effective expert" who could cross-examine and/or impeach the State's ballistics expert, and because he failed to hire an independent examiner to test for DNA and gunpowder residue. Third Postconviction Filing 17, 21-22, D.I. 108; Fourth Postconviction Filing 4-5, D.I. 107.

[223] *Asbury v. State*, 219 A.3d 994, 2019 WL 4696781, at *4 (Del. Sept. 25, 2019) (TABLE). The Court notes these claims are identical to the claims Appiah asserts against Trial Counsel, which, as discussed above, fail.

41

## C.    Appiah's Due Process Claims

### 1.    The State's Failure to Produce All Notes from Kanu's Pretrial Interviews Violated *Jencks* and *Brady*.

Appiah claims that the State's failure to produce all the Department of Justice's notes from Kanu's pretrial interviews violated *Jencks* and *Brady*.[224]  This issue was addressed at trial.  After Trial Counsel objected to Kanu's inconsistent testimony and raised the *Brady* argument at sidebar, Trial Counsel was provided with the social worker's notes.[225]  After reviewing them, Trial Counsel moved for a mistrial.[226]  The Court denied the motion, stating:

> So you now have the inconsistent statement made at the pretrial conference.  I believe Mr. Bloom . . . made a mistake.  I don't find any ill-intent, or deliberate concealment.  You have the Jury.  You have Mr. Kanu.  You can now cross-examine.  And you have not articulated how you would have done anything differently . . . . There is no basis for a mistrial here because you haven't said anything about how you would have handled your case differently . . . . I am not finding grounds for a mistrial.  You knew coming into trial that Mr. Kanu planned to testify that Mr. Appiah was the shooter.  That he identified Mr. Appiah.  That is no surprise.  You knew from the police camera – and I am just surmising because I am at a disadvantage because I have not seen all of the evidence yet – but you knew, based on your arguments before now, that Mr. Kanu was going to say he had a gun.  I understand you are claiming that this is new evidence that it was held at his head.  The purpose of a trial is to find the truth.  You can cross-examine the

---

[224] First Postconviction Filing, D.I. 80; Second Postconviction Filing 3-4, D.I. 81; Def.'s Reply Br. 1-2, D.I. 137.  As noted *supra* note 207, *Jencks* only concerns the witness' own statements, not notes and summaries, and therefore is not applicable here.  *See Hooks*, 416 A.2d at 200.  Trial Counsel conceded this was not a *Jencks* issue, and regardless, the State provided all *Jencks* material. A158.

[225] A153.

[226] A155-56.

defendant about the inconsistency of that statement. But we are going to move on.[227]

Appiah did not raise this claim on direct appeal. Therefore, this claim is barred under Rule 61(i)(4) because it was formerly adjudicated in the proceedings leading to Appiah's conviction.

2. The Police's Use of an Unduly Suggestive Identification Procedure that Relied on Unreliable or Materially Compromised Ballistic Evidence Violated Appiah's Due Process Rights.

Appiah argues that his Due Process rights were violated because the police relied on an unduly suggestive procedure based on unreliable or materially compromised ballistics evidence to identify Appiah.[228] Appiah did not raise this issue on direct appeal, and therefore it is procedurally barred under Rule 61(i)(3) as procedurally defaulted. Appiah cannot circumvent this bar because he has not proven cause and prejudice,[229] nor has he attempted to satisfy the pleading requirements set forth in Rule 61(d)(2)(i) or (d)(2)(ii).[230]

---

[227] A154-56.

[228] First Postconviction Filing 4, D.I. 80; Second Postconviction Filing 3-4, D.I. 81; Def.'s Reply Br. 3-4, D.I. 137. Appiah argues the evidence was unreliable or materially compromised by Carl Rone's involvement, but Rone had "nothing to do with [Appiah's] case." A68. It appears that he further argues Rone's alleged involvement led to Appiah's identification, and hence constituted an unduly suggestive identification procedure, however the ballistics evidence was circumstantial evidence, not an eyewitness identification. *See Goode v. State*, 136 A.3d 303, 309 (Del. 2019) (explaining an unduly suggestive identification is one in which improper police conduct creates a substantial likelihood of misidentification by an eyewitness).

[229] *See* Super. Ct. Crim. R. 61(i)(3)(A)-(B).

[230] *See* Super. Ct. Crim. R. 61(i)(5); Super. Ct. Crim. R. 61(d)(2)(i)-(ii).

### D. Appiah's Cumulative Error Claim

In a final effort to obtain relief, Appiah states that the "numerous errors outlined in these claims of ineffective assistance of counsel" trigger the cumulative error doctrine.[231] A cumulative error must derive from multiple prejudicial errors.[232] A cumulative review of unfounded allegations of ineffective assistance of counsel cannot change the outcome of the analysis.[233] Here, Trial and Appellate Counsel did not commit any professional errors, and a cumulative review of their representation likewise reveals no material defects that deprived Appiah of a substantial right or that resulted in manifest injustice. Accordingly, Appiah's final claim fails.

## V. CONCLUSION

After reviewing the record, the briefing and evidence submitted by the parties, and the statutory and decisional law, the Court finds that Appiah's postconviction claims are meritless. His ineffective assistance of counsel claims do not demonstrate that Trial or Appellate Counsel were objectively unreasonable. His Due Process claims are similarly meritless. Appiah has not presented any contrary evidence to overcome the presumption of regularity. Accordingly, his Motion for Postconviction Relief[234] is **DENIED.** Because the Court finds Appiah's claims

---

[231] Third Postconviction Filing 25, D.I. 108; Def.'s Reply Br. 24-25, D.I. 137.
[232] *Michaels v. State*, 970 A.2d 223, 231 (Del. 2009).
[233] *Zebroski v. State*, 822 A.2d 1038, 1049 (Del. 2003), *overruled on other grounds by Bass v. State*, --- A.3d ---, 2023 WL 4093415 (Del. June 20, 2023).
[234] This includes all filings.

meritless, his Motion for Rule 61 Discovery is **DENIED as MOOT.** Postconviction

Counsel's Motion to Withdraw is **GRANTED.**

  **IT IS SO ORDERED**.

       /s/ Jan R. Jurden

Jan R. Jurden, President Judge
